UNITED STATES of America,
Plaintiff-Appellee,

v.

Peter BECKERMAN,
Defendant-Appellant.

No. 648, Docket 74–2478.

United States Court of Appeals,
Second Circuit.

Argued Feb. 11, 1975.

Decided May 13, 1975.

Michael Q. Carey, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., Lawrence S. Feld, Asst. U. S. Atty., on the brief), for appellee.

Robert Polstein, New York City (Orans, Elsen & Polstein, New York City), for appellant Beckerman.

Before HAYS and FEINBERG, Circuit Judges, and HOLDEN,* District Judge.

HOLDEN, District Judge:

The appellant, Peter Beckerman, was charged in a single count indictment with distributing and possessing with intent to distribute approximately 28 grams of cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A) (1970). On May 10, 1974, after three days of trial before the United States District Court for the Southern District of New York, Constance B. Motley, J., the jury was dismissed without reaching a verdict after the forelady reported a deadlock. On September 9, 1974, the appellant filed a motion to dismiss the in-

---

* Of the United States District Court for the District of Vermont, sitting by designation.

dictment which advanced the contention that retrial would subject the accused to double jeopardy.[1] This appeal is from the order denying the motion to dismiss.

■ At the outset the Government challenges the court's jurisdiction to review Judge Motley's order on the contention that the ruling is not a final decision, hence not appealable within 28 U.S.C. § 1291 (1970). In general, an order denying a motion to dismiss an indictment is interlocutory and not appealable. *See* United States v. Garber, 413 F.2d 284, 285 (2d Cir. 1969).

■ The Supreme Court in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), recognized that there is a "small class" of decisions from which an appeal is properly taken under § 1291, even though final judgments have not been entered. The Court identified the characteristics of that narrow area of cases where an appeal will lie: (1) the order finally determines rights "separable from and collateral to" the main action, (2) the collateral rights so determined are "too important to be denied review," and (3) those rights "will have been lost, probably irreparably" after final judgment is entered. *Id.* at 546, 69 S.Ct. at 1225. These features mark the denial of a plea of double jeopardy. Although the indictment persists, and a retrial may follow, the order appealed from bears the characteristics defined in *Cohen*; yet the Government maintains the appeal is premature. Its argument relies heavily on United States v. Kaufman, 311 F.2d 695 (2d Cir. 1963), and United States v. Ford, 237 U.S. 57 (2d Cir. 1956), vacated as moot, 355 U.S. 38, 78 S.Ct. 114, 2 L.Ed.2d 71 (1957).

In *Kaufman* the question was presented in the context of the sufficiency of the evidence, rather than double jeopar-

dy. The defendants were convicted on two substantive narcotic counts; the jury was unable to reach a verdict on the third count which charged conspiracy. Affirming the convictions on the substantive counts, the Court dismissed, as premature, the appellants' contention that the trial court should have dismissed the conspiracy count for insufficient evidence. The issue of double jeopardy was only obliquely considered in *Ford, supra,* in an opinion which affirmed convictions on three other counts. More importantly, its precedential authority has been undermined since the opinion was later vacated as moot.

■ The issue of double jeopardy is collateral to the determination of whether the accused is innocent or guilty of the offense for which he has been indicted. The constitutional protection against being twice put in jeopardy for the same offense is a "valued right," Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949), that is too important to be denied review. The protection against double jeopardy guards "not against being twice punished, but against being twice put in jeopardy," United States v. Ball, 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L.Ed. 300 (1896).[2] The right will be invaded if an accused, who has properly invoked the Fifth Amendment protection against being twice put in jeopardy, is called upon to suffer the pain of two trials. Green v. United States, 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

If an accused is to be afforded "the full protection of the double jeopardy clause, a final determination of whether jeopardy has attached to the previous trial must, where possible, be determined prior to any retrial." United States v. Lansdown, 460 F.2d 164, 171 (4th Cir. 1972). Contra, Gilmore v. United States,

1. The case was reassigned to Judge Owen for retrial. He referred it back to Judge Motley for a decision on the appellant's motion to dismiss.

2. At oral argument, the Government contended that the right against double jeopardy was a right against being subjected to two verdicts, rather than two trials when one is inconclu-

sive. Such an argument is contrary to the long established interpretation of this Fifth Amendment guarantee. *Ball, supra*; Green v. United States, 355 U.S. 184, 187–188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion of Harlan, J.).

264 F.2d 44 (5th Cir. 1959), cert. denied, 359 U.S. 994, 79 S.Ct. 1126, 3 L.Ed.2d 982 (1959). The reasoning of the opinion in *Lansdown* is persuasive here. We conclude that we have jurisdiction to review the denial of the defendant's motion to dismiss the indictment on the predicate of the double jeopardy clause. This is a logical extension of the concept of appealability expressed in *Cohen*. United States v. Lansdown, *supra,* 460 F.2d at 170. It is in keeping with Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., 496 F.2d 800 (2d Cir. 1974).[3]

We turn now to the problem of double jeopardy, generated by the declaration of a mistrial after the jury has reported a deadlock. Since it is impossible to define all the varying circumstances which would render appellate interference proper, it is essential, on review, to consider the pattern of events which preceded the discharge of the jury. *See* United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824); United States v. Glover, 506 F.2d 291, 295 (2d Cir. 1974).

The trial commenced on May 8, 1974, and was submitted to the jury at 2:30 in the afternoon of May 10, 1974. The defense asserted entrapment on the part of a paid Government informant, Mary Adler, and Special Agents Meale and Lightcap of the Drug Enforcement Administration. Some forty-five minutes after the jury commenced deliberations, the forelady sent a note to the court stating they would like to hear again the Judge's charge in regard to Mary Adler.[4] Two hours later deliberations were again interrupted by a second note to Judge Motley requesting to hear certain testimony reread.[5] After recess for dinner, the jury resumed deliberations at eight o'clock. At 9:15 P.M. the court received, in open court, a third communication which read: "We the jury are deadlocked."

The message was read to counsel by Judge Motley. Counsel for the Government immediately requested the court give the jury a modified *Allen* charge. Defense counsel made no comment.[6] The court directed that the jury be

---

**3.** It is of interest that Justice Story's classic opinion in United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), was presented to the Supreme Court from the Circuit Court for the Southern District of New York on a certificate of division in the opinions of the judges of that court after the jury, being unable to agree in the first trial, was discharged. The point of disagreement among the judges occurred before the retrial.

**4.** Mary Adler did not testify at the trial.

**5.** The note read:

"Would like to hear the testimony of Mr. Lightcap and Mr. Meale in regard to phone calls to Mary Adler by Mr. Beckerman in Mary Adler's apartment, what was said, what time the calls were made on September 18th. Also the testimony of Mr. Peter Beckerman in regard to the calls he received from Mary Adler on September 18th at his office, what was said and what time the calls were made and testimony by Miss Burns in regard to the time, that Mary Adler called Peter Beckerman in his office."

**6.** The Court: The note reads as follows:

"We the jury are deadlocked," which I gather means they can't reach a verdict so we will bring them in.

Mr. Carey: Your Honor, the Government would request that the Court give the jury a modified Allen charge.

The Court: I don't know what a modified Allen charge is. You mean the Allen charge?

Mr. Carey: Yes.

The Court: I think the jury has indicated that they are deadlocked.

Mr. Carey: They have only been deliberating a little over three hours.

The Court: Three hours? The jury went out at 2:35. It is now 9:25.

Mr. Carey: Your Honor, I am not counting the time when they were in the courtroom. I am counting the time when they were in their jury room when they were out of the presence—

The Court: We reread a great deal of the record to them. I have reread the charge on entrapment to them and I read the Government's failure to call a witness and the significance of that and the rereading of that testimony took at least 50 minutes. You have to count that as part of their deliberations. I don't think it is fair to say they weren't deliberations [sic]. We were reading testimony which is part of their deliberations. We were rereading a part of the charge.

This says they are deadlocked and it is a one count case.

Mr. Carey: I have nothing further to say, your Honor.

The Court: Bring in the jury.

(Jury present.)

brought to the courtroom. On the jury's return this colloquy followed:

The Court: Ladies and gentlemen I have your note which reads "We the jury are deadlocked."

Does that mean that you are not able to reach a verdict, and the question I want to put to you whether you feel with a little more time you might be able to reach a verdict?

The Forelady: It is very hard to say. We are all very tired at this time and our biggest problem is we don't think we have enough evidence and this is our biggest hassle and maybe another time, another day we may be clearer.

The Court: The question I asked you was whether you thought with more time you would be able to reach a verdict, so the answer is no, is that it?

The Forelady: The way it seems now, it doesn't seem as though we will be able to.

Mr. Polstein: May I make a suggestion?

The Court: No, you may not.

Thank you very much. The court is going to declare a mistrial, the jury is excused.

We have arranged for a bus to take you home. Are they going to be here at 10:00 o'clock?

The jury is excused.

Mr. Polstein: Before the jury is excused, in view of the forelady's statement to the Court, I would respectful-

ly request the Court to read the jury again your charge on burden of proof. I think that the foreman or forelady of the jury has expressed to the Court a view of the jury that can be cleared up. This jury has been out since 2:35. You just heard that they felt they don't have enough proof. I wonder if you would charge them again the quantum of proof.

The Court: The jury is dismissed.

(Jury leaves courtroom.)

■ On this record, we are called upon to test the validity of a ruling that was independently made without partisan urging or objection. The Government did not request the jury's discharge, but rather sought to press the jury out of deadlock by way of a "modified *Allen* charge." [7] The defendant remained neutrally silent, at least until the jury voiced its concern about the quantum of proof. Apparently that remark by the forewoman inspired the request, on afterthought, that the court instruct again on the burden of proof.

The court was entitled to take the jury's word, that they were deadlocked, at face value. That the court's declaration of a mistrial was made without the appellant's active or express consent, does not impair the validity of the ruling. "Where for reasons deemed compelling by the trial judge, * * * the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consist-

---

7. *See* Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). *Compare* ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury, § 5.4 and Commentary (Approved Draft, 1968).

In this case Judge Motley, in her initial instructions, charged:

I suggest to you that if you follow that oath and try the issues without combining your thinking with any emotions, you will arrive at a true and just verdict.

It must be clear to you, once you get into an emotional state and let bias or sympathy or prejudice interfere with your thinking, then you will not arrive at a true and just verdict. As you deliberate, ladies and gen-

tlemen, please be careful to listen to the opinions of your fellow jurors and ask for an opportunity to express your own views. No one juror holds center stage in a jury room. No one juror controls or monopolizes the deliberations.

If after listening to your fellow jurors and if after stating your own view you become convinced that your view is wrong, do not hesitate because of stubbornness or pride of opinion to change your view.

On the other hand, do not surrender your honest conviction solely because you are outnumbered.

As I have said, your verdict must be unanimous. It must represent the absolute conviction of each one of you.

ently with the Fifth Amendment." Gori v. United States, 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901 (1961).

To be sure, where a double jeopardy question may develop, "the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be fairly disposed to his fate." United States v. Jorn, 400 U.S. 470, 486, 91 S.Ct. 547, 558, 27 L.Ed.2d 543 (1971), (plurality op. Harlan, J.).

The interest of the defendant in having the trial proceed to a verdict by this particular jury is not always paramount to "the public's interest in fair trials designed to end in just judgments." Illinois v. Somerville, 410 U.S. 458, 470–471, 93 S.Ct. 1066, 1073, 35 L.Ed.2d 425 (1973), quoting Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

The report of a jury in deadlock could be welcome news to an accused who is fearful of his fate. For him the prospects of a retrial might be preferable to the alternative of a possible guilty verdict deliberated by a jury who had informed court and counsel that they were "all very tired." In this predicament, if the appellant had an interest in having guilt determined by this particular jury, he failed to make the fact known to the court.[8]

The appellant's argument that the discharge of the jury was so hasty that he had no opportunity to make a considered objection, is not borne out by the record. Before the jury was dispersed, the appellant took the opportunity to request that the jury be reinstructed on the burden of proof. In this suggestion it appears the appellant sought to press a possible advantage from the forelady's untoward disclosure that the jury's "biggest hassle" was the sufficiency of the evidence.[9]

In dealing with the appellant's posttrial motion to dismiss the indictment, Judge Motley stated that she construed the defendant's silence as agreement that enough time had passed.[10] Although the defense was not totally still, it was silent on the prospect of a mistrial and nothing was said to dispel the inference of accord. "Consent need not be express, but may be implied from the totality of circumstances attendant on a declaration of mistrial." United States v. Goldstein, 479 F.2d 1061, 1067 (2d Cir. 1973), cert. denied, 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973).

There were other factors which appealed to the discretion of the trial judge. The rejection of the *Allen* charge imports an awareness of the danger of coercing an erroneous verdict. *Cf.* United States v. Goldstein, *supra,* 479 F.2d at 1068; United States v. See, 505 F.2d 845,

---

8. Although we recognize the difficulty of Mr. Polstein's position, it would appear that his apprehension of the jury reaction to objection could have been alleviated by a request for a bench conference. Any objection to discharge could then have been established without fear of incurring the jury's ill will. Furthermore, although the Court did cut off Mr. Polstein's attempt to make a suggestion, he did have the opportunity to request an additional charge indicating that he could have also, at that point, raised an objection to the jury's discharge had he been so inclined.

9. In order to prevent such problems in the future, we concur in the recommendation of the District of Columbia Circuit that the jury, upon retirement to deliberate, should be instructed "(T)o report only a verdict or inability to reach one." Mullin v. United States, 123 U.S.App.D.C. 29, 356 F.2d 368, 370 (1966); Scott v. United States, 91 U.S.App.D.C. 232,

202 F.2d 354, 355 (1952), cert. denied, 344 U.S. 879, 73 S.Ct. 176, 97 L.Ed. 681 (1952).

10. Judge Motley stated that she had declared a mistrial for the following reasons: (1) the trial was very short in length, (2) it was a relatively simple case involving only a one count indictment and a single defendant, (3) the defendant, in asserting the defense of entrapment, admitted the commission of the offense, (4) the jury listened to a rereading of the charge on entrapment, (5) when defense counsel remained silent after the Court's reading of the jury note, stating that they were deadlocked, the Court construed his silence as agreement on his part that enough time had passed for the jury to have reached a verdict and (6) the Court interpreted the forewoman's statements as indicating that the jury would be unable to reach a verdict even with additional time; no jury member declared otherwise.

852 (9th Cir. 1974). The issues were not complicated and were submitted after a relatively short trial. After reporting the deadlock, the court asked the jury if more time would enable them to reach a verdict. With some equivocation, the forelady answered in the negative. There was no report that the jury was on the verge of a verdict as in United States v. Lansdown, *supra.* None of the other jurors gave any indication that they could reach a verdict nor that additional time would cure their disagreement.

The fact that the jury commenced deliberations at about 2:30 P.M. and was discharged seven hours later, is not the determinant factor. *See* United States v. Cording, 290 F.2d 392 (2d Cir. 1961); United States v. See, *supra,* 505 F.2d at 852. We find no justification in the record for the appellant's conclusion that the jury would probably have returned a verdict of acquittal. The suggestion that a retrial will aid the prosecution to the harassment of the accused is similarly speculative.

The breadth of the discretion entrusted to the trial judge, stressed in *Gori, supra,* was reaffirmed in Illinois v. Somerville, *supra,* 410 U.S. at 462, 93 S.Ct. 1066. Cautioning against scrutinizing the exercise of that discretion with "sharp surveillance," Justice Frankfurter wrote in *Gori* that trial judges are not compelled—"to navigate a narrow compass between Scylla and Charybdis" lest they be made "unduly hesitant conscientiously to exercise their most sensitive judgment—according to their own lights in the immediate exigencies of trial—for the more effective protection of the criminal accused." *Gori,* 367 U.S. at 370, 81 S.Ct. at 1527.

Here the jury announced its inability to reach a verdict. In this context of the record, the release of the jurors was within the permissible reach of the trial court's informed discretion. No right of exemption from retrial has been established within the doctrine of United States v. Perez and the train of cases that have followed. *E. g., Gori, Cording* and *See, supra.*

The order of the district court is affirmed.