**UNITED STATES of America**

v.

**Joseph CROSLEY.**

No. 84–490–01.

United States District Court,
E.D. Pennsylvania.

Aug. 21, 1985.

---

Bucky P. Mansuy, Asst. U.S. Atty., Philadelphia, Pa., for Government.

Donald M. Moser, Philadelphia, Pa., for defendant.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

The defendant moved to dismiss Counts 12 through 19 and Count 26 of indictment 84–490–01, and to bar further prosecution of the defendant on these counts, as violative of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. The defendant argues that the Court abused its discretion in declaring a mistrial at defendant's first trial on these charges where there existed no manifest necessity for such a declaration.

By order dated August 6, 1985, the motion was denied. The following sets forth the court's findings of fact and conclusions of law with respect to this ruling.

The defendant was charged in twenty-three Counts of criminal indictment number 84–490. Trial commenced on Monday, April 8, 1985, with closing argument presented on Friday, April 12, 1985. On Monday, April 15, 1985, after instructions from the Court, the jury deliberated for approximately five and a half hours. Deliberation resumed on the morning of Tuesday, April 16, 1985.

Approximately one hour after beginning its second day of deliberation, the jury requested a copy of the notes of defendant's testimony. Transcript of April 16, 1985, p. 3. At 10:45 a.m., the Court informed the jury that the transcript was not available. Transcript, p. 3–4.

At 2:10 p.m., the Court advised counsel of a note from the jury stating that an impasse had been reached on Counts 12 through 19 and asking for further instruction regarding Counts 25 and 26. Transcript, p. 4. Following consultation with counsel, the Court addressed the jury at 2:18 p.m. Transcript, p. 8. The Court began by responding to the jury's announcement of an impasse as follows:

> With respect to your first statement where you say we have reached an impasse on several counts of the indictment, I don't know whether you want me to comment on that at this point or not. I think perhaps what I'll do, I'll respond to the second query and let you continue your deliberations, and at an appropriate time, you can tell me where you stand, whether or not you can return to a verdict or not with respect to some or any of the counts.

Transcript, p. 9.

After discussing Counts 25 and 26, the Court responded again to the subject of an impasse, stating as follows:

> As I say, with respect to your first statement, we'll just wait and see where you are and then you can tell me whether you have a verdict on some or all the counts, or what you want to do. You may continue your deliberations.

Transcript, p. 10.

The jury resumed its deliberations at 2:22 p.m., and returned to render its verdict at 3:10 p.m. Transcript, p. 10. Before taking the jury's verdict, the Court engaged in a colloquy with the jury, as follows:

> THE COURT: Do you have a foreman? Who is your forman?
>
> JUROR NO. 1: Yes.
>
> THE COURT: You can answer for us. I've got a report from the marshal advising me that you have a verdict on Counts 1 through 5, 7 through 11, 20, and 22—and 25. Would that also include 26, the last count? You do or do not have a verdict on that?
>
> JUROR NO. 1: Not on the last one, no.
>
> THE COURT: And then you say with respect to No. 12 through 19, you are unable to reach a verdict, is that correct?
>
> JUROR NO. 1: Correct.
>
> THE COURT: What about 26? Are you unable to reach a verdict or not? Do you want to continue to deliberate with respect to No. 26? I don't know where you stand with respect to that. Do you want to continue your deliberations?
>
> First of all let me step back a minute.
>
> Are you agreed that you are hopelessly deadlocked with respect to 12 through 19?
>
> JUROR NO. 1: Yes.
>
> THE COURT: You all agree to that. With respect to 26, I don't know where you stand with respect to that, so if you want a few minutes to go back and discuss it, or take whatever time you want to discuss it, and let me know how you stand with respect to Count 26. That's the last one I believe in the indictment. If you want to take a few minutes and go back and discuss it and let me know.
>
> JUROR NO. 10: We felt the decision on 26 depended upon what decision we reached on 12 to 19.
>
> THE COURT: Then you are saying you would be hopelessly deadlocked with respect to 26 as well as 12 through 19?
>
> JUROR NO. 10: Yes.
>
> THE COURT: Do you all agree to that? (All jurors agreed.)
>
> THE COURT: That's one further point that's deadlocked.
>
> All right, then you are prepared to return a verdict on Counts 1 through 5 and 7 through 11, 20 through 22, and 25, is that correct?
>
> JUROR NO. 10: Yes.

THE COURT: All right, we'll take the verdict on those counts.

Transcript, p. 10–12.

The jury then announced its verdict of "not guilty" on each of fourteen counts in the indictment. Following receipt of the verdict, the Court and counsel spoke as follows:

THE COURT: Thank you, you may be seated.

All right, ladies and gentlemen, since you've told me you were hopelessly deadlocked with respect to the remaining counts, we'll declare a mistrial with respect to them, and that will conclude your services as jurors on this case. Is it going to be necessary for this jury to come back tomorrow?

DEPUTY CLERK: I can make a phone call to find out.

They are to call the code-a-phone between 4 and 5 tomorrow afternoon.

THE COURT: You can go home now but check with the code-a-phone. Do you all have the code-a-phone number? You are supposed to call in call that number between 4 and 5 tomorrow afternoon and they'll tell you whether you are to report in on Thursday or Friday, do you understand?

In the event you are not called back, I want to thank you on behalf of all the judges and the citizens of the Eastern District of Pennsylvania for your service as jurors. I know it's an inconvenience to many of you to have to give up your time from your usual occupations and come down and serve as jurors in the courthouse, but you should keep in mind that our judicial system is really the cornerstone of our democracy, it's the place where everybody heirs their disputes. It includes disputes between citizens of the same rank and between the citizens and the government. It's the cornerstone of our democracy. Without it I don't think we would have the great government that we have today, and you as jurors are the cornerstone of the judicial system, because without people

like yourselves who are willing to give up their time and come down here and serve as jurors and to resolve these disputes and to determine what the facts are, our judicial system would not be able to function.

So I hope you recognize although it may have been an inconvenience that you performed a great service to the country and to our system of government, and we all deeply appreciate it. Thank you, you may be excused.

MR. MOSER: (defense counsel) I don't mean any disrespect, I assume the record will reflect I do not agree that the jury should be discharged.

THE COURT: Okay.

MS. EPPS: (Asst. U.S. Atty.) Your Honor, since they are still intact, I would ask the Court to bring them back because obviously what Mr. Moser is doing is laying a foundation for a motion should the government seek to retry his client, and I don't think that's necessary.

THE COURT: No, the jury said they are hopelessly deadlocked, there's no sense keeping them any longer.

MS. EPPS: Thank you.

Would it be your policy we would be permitted to inquire of them what the numerical split was?

THE COURT: I don't encourage it, but certainly not until their term of service has concluded, and they have until at least Friday.

■ The defendant's protection against double jeopardy is grounded in the Fifth Amendment to the United States Constitution, which states in pertinent part that "No person ... shall ... be subject for the same offense to be twice put in jeopardy of life or limb...." *Id.* Jeopardy attaches in a jury trial when the jury is empaneled and sworn. *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971). The Fifth Amendment does not, however, guarantee that a defendant will never be compelled to twice stand at trial. As stated in *United States ex rel. Webb v. Court of Common Pleas*, 516 F.2d 1034

(3d Cir.1975), "The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment." 516 F.2d at 1040, *quoting, Wade v. Hunter,* 336 U.S. 684, 688–89, 69 S.Ct. 834, 836–37, 93 L.Ed. 974 (1949).

■ In a variety of circumstances, retrial is not prohibited where a criminal proceeding is terminated prior to verdict. A finding by the trial judge that the jury is unable to reach a verdict is described as "the classic basis for a proper mistrial." *Arizona v. Washington,* 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978). Because the trial judge is in the best position to assess all the factors bearing upon the discretionary determination whether the jury is deadlocked, his decision will be accorded great deference by a reviewing court. *Id.,* at 510 n. 28, 98 S.Ct. at 832 n. 28.

■ In making this determination, the trial judge must exercise care to protect the rights of the defendant. *United States ex rel. Webb v. Court of Common Pleas,* 516 F.2d 1034, 1043 (1975). Courts have identified several factors which indicate whether in declaring a mistrial concern for the rights of the accused has been exercised. As enumerated in *Arnold v. McCarthy,* 566 F.2d 1377, 1387 (9th Cir.1978), these include the following:

1. a timely objection by the defendant;
2. the jury's collective opinion that it cannot agree;
3. the length of jury deliberations;
4. the length of the trial;
5. the complexity of the issues presented to the jury;
6. any proper communications between the judge and jury;
7. the effects of exhaustion and the impact of coercion of further deliberations on the jury.

There is no numerical formula for applying these factors. Rather, they are to be balanced by the trial judge against the background of all the circumstances existing at the time. *United States v. Larry,* 536 F.2d 1149, 1153 (6th Cir.), *cert. denied,* 429 U.S. 984, 97 S.Ct. 502, 50 L.Ed.2d 595 (1976).

■ Failure to raise a timely objection to declaration of a mistrial for the reason that the jury is deadlocked precludes a later claim of double jeopardy. *United States v. Phillips,* 431 F.2d 949 (3d Cir.1970). Without such an objection, the record reflects "only the actions of an experienced trial judge who heard all the evidence, knew the complexity or simplicity of the case, and decided further deliberations would be in vain." *Id.,* at 950–51.

■ In this case, the defendant expressed disagreement with discharge of the jury only after the jury had been discharged. Transcript, p. 16. Such disagreement, if deemed an objection, was not timely made. *United States v. Beckerman,* 516 F.2d 905, 908–909 (2d Cir.1975). In *Beckerman,* the trial judge did not solicit the opinion of defense counsel regarding declaration of a mistrial, and, indeed, cut off an attempt by him to offer "a suggestion." 516 F.2d at 908. Nonetheless, the fact that defense counsel failed to request a sidebar conference or press an objection to discharge led to an inference of accord. 516 F.2d at 909.

In this case, counsel had ample opportunity to raise an objection to a mistrial when the jury first reported an impasse at 2:10 p.m. or again at 3:10 p.m. Transcript, p. 4, 10. Instead, defense counsel remained silent. No expression of disagreement was offered until after the jury had returned a verdict of not guilty on 14 counts and been discharged. By that time, the defendant could reasonably have been attempting to exploit a newly perceived advantage with this jury. 516 F.2d at 909. However, the discharge had already been accomplished with no objection offered by either the defendant or government.

■ Moreover, the Court's determination in this case that the jury was hopelessly

deadlocked was properly made and substantiated on the record. The notion of a deadlock was first brought to the court's attention by the jury itself when it advised the court it had reached an "impasse" with respect to the counts in question. Transcript, p. 4. This voluntary statement of the jury is entitled to great weight in the trial court's determination whether a deadlock exists. *United States v. See*, 505 F.2d 845, 851 (9th Cir.1974), *cert. denied*, 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975).

The Court's first response to notice of the jury's impasse was to direct the jury to continue its deliberations and report later whether it could reach a verdict. Transcript, p. 9 and 10. Providing the jury a second chance to resolve its impasse gives additional support to the Court's eventual finding that the jury was deadlocked. *Henderson v. Wright*, 533 F.Supp. 1373, 1378 (D.Me.1982).

Following further deliberations, the jury reported at 3:10 p.m. that it remained at an impasse with respect to certain Counts. Transcript, p. 11. The Court inquired of the jury foreperson concerning the counts on which the jury had a verdict. Transcript, p. 11. The Court then asked the foreperson whether the jury was hopelessly deadlocked regarding the remaining Counts. Transcript, p. 11. After the foreperson said the jury was deadlocked, the Court again offered the jury the opportunity to continue deliberating. Transcript, p. 11–12. This offer was rejected by yet another juror speaking on behalf of the jury. Transcript, p. 12. The Court then asked the entire jury whether each member was in agreement with this assessment, and they all agreed. Transcript, p. 12.

■ In determining whether the jury's report of a deadlock is correct, the trial judge makes sufficient inquiry by questioning the foreperson in open court. *United States v. Nelson*, 543 F.2d 631, 632 (8th Cir.1976); *United States v. Larry*, 536 F.2d 1149, 1153 (6th Cir.), *cert. denied*, 429 U.S. 984, 97 S.Ct. 502, 50 L.Ed.2d 595 (1976); *United States v. Beckerman*, 516 F.2d 905, 908 (2d Cir.1975). In this case, the court went even further, directing his inquiry to the entire jury and raising a response from another member of the jury. Thus, the record persuasively establishes that the jury was truly deadlocked. *United States ex rel. Webb v. Court of Common Pleas*, 516 F.2d 1034, 1043–44 (3d Cir.1975).

■ No mechanical formula exists for weighing the length of the deliberations relative to the length of the trial. In this case, the jury deliberated for at least 10½ hours over two days, which is a sufficient period of time. *United States v. See*, 505 F.2d 845, 852–53 (9th Cir.1974), *cert. denied*, 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975). Most significant, however, is the fact that the deliberations were lengthly enough for the jury to return a verdict on 14 of 23 counts presented to it, and to twice report an impasse on the remaining nine counts. Thus, this jury had clearly deliberated long enough to resolve all the issues presented to it, to render whatever verdicts it was able to, and to determine its collective judgment.

I am satisfied that the record adequately supports the conclusion that the jury was hopelessly deadlocked as to counts 12 through 19 and 26. Declaration of a mistrial due to jury deadlock is a matter committed to the sound discretion of the trial court, and the consent of the defendant is not required. The inability of the jury to return a verdict justifies a mistrial, and does not, on double jeopardy grounds, prohibit retrial of the accused. Clearly, there was no abuse of discretion and the motion to dismiss was properly denied. Indeed, I consider the defendant's motion frivolous and taken for the purpose of delay.