**UNITED STATES, Appellee,**

v.

**Robyn DiPIETRO, Defendant, Appellant.**

No. 90–1657.

United States Court of Appeals, First Circuit.

Heard Nov. 6, 1990.

Decided June 13, 1991.

Marie T. Buckley, Boston, Mass., for defendant, appellant.

Cerise Lim–Epstein, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief, Boston, Mass., for appellee.

Before BREYER, Chief Judge, BROWN,* Senior Circuit Judge, and SELYA, Circuit Judge.

* Of the Fifth Circuit, sitting by designation.

JOHN R. BROWN, Senior Circuit Judge.

At issue here is whether the Double Jeopardy clause of the Constitution [1] bars retrial of a defendant where the court declared a mistrial *sua sponte*, without objection by the defense, because of serious prejudicial error by the government in the presence of the jury. We hold that it does not, and therefore we affirm.

Robyn DiPietro was charged in a one-count, compound indictment for credit card fraud, 18 U.S.C. § 1029(a)(2) (1988),[2] and aiding and abetting (in the commission of credit card fraud), 18 U.S.C. § 2(a) (1988).

The government presented evidence which showed that, between August, 1986 and December, 1987, a group of about a dozen men and women perpetrated the fraud at Jordan Marsh and Filene's. Four of the participants worked as sales clerks at the stores. Accomplices came to the stores at prearranged times when one of these clerks was working, selected merchandise and brought it to that clerk. The clerk would "ring up" a credit instead of a charge. Thus, two frauds were perpetrated in one transaction, since the ring member obtained not only a fraudulent credit to a credit card account (which would be paid to the credit card issuing bank by the store issuing the credit), but merchandise at no charge. The "customers" all used *their own* credit cards—American Express, MasterCard, or Visa cards issued by a number of banks engaged in interstate commerce. The amounts of the credits were deposited into the card holders' bank accounts, and participants shared the proceeds of the transactions with the inside clerks. Bank records introduced into evidence indicated that the bank-issuers and credit card holders incurred no losses, but the merchants did suffer monetary losses as a result of the transactions.

After the government rested, DiPietro moved for Judgment of Acquittal, asserting that the government had proved only common law larceny by trick and not the federal crime, because no evidence had been presented that the credit cards were "unauthorized" as defined by the statute.[3] The court denied the motion, stating that the statutory definition would be given in the jury charge. The defense offered no evidence, and again asserted in closing argument to the jury that this element of the crime—the use of unauthorized cards—had not been proved.

In rebuttal argument to the jury, the government asserted that the guilty pleas and convictions of DiPietro's named cohorts constituted evidence that all the elements of the accusations against DiPietro had been proved, thus using their convictions for purposes other than credibility. The court allowed these statements over repeated objections by the defense.

---

1. The fifth amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. This of course is made applicable to the states by the fourteenth amendment. *Benton v. Maryland,* 395 U.S. 784, 787, 89 S.Ct. 2056, 2058, 23 L.Ed.2d 707, 711 (1969).

   Jeopardy attaches in a jury trial when the jury is impaneled and sworn, and in a bench trial when the judge begins to hear the evidence. *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062–63, 43 L.Ed.2d 265, 274 (1975).

2. "(a) Whoever—... (2) knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period ... shall, if the offense affects interstate or foreign commerce, be punished as provided...." 18 U.S.C. § 1029(a)(2) (1988).

3. "Unauthorized access device" is defined as "any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud...." 18 U.S.C. § 1029(e)(3) (1988). The term "access device" includes credit cards. 18 U.S.C. § 1029(e)(1) (1988).

   The government alleged that the cards involved were "obtained with intent to defraud." DiPietro contended that the § 1029(a)(2) provision against the use of "unauthorized" cards is limited to cards *either originally obtained from the issuer by the cardholder with intent to defraud or obtained by a third party from the cardholder with intent to defraud.* DiPietro's scam involved cards which, so far as the evidence revealed, had originally been obtained by the cardholders from the issuers for proper purposes and without intent *at that time* to defraud anyone, but were later used by the cardholders themselves, and not by third parties, to defraud department stores, not the cardholders.

At sidebar, the defense requested a special instruction that "the fact somebody pleaded guilty does not relieve [the government] of the burden of proof, and it is not any evidence whatsoever that all the elements of the crime were proved." The court agreed to give such an instruction.

During the luncheon recess, the court in its solitude was troubled about the possibly significant error. After the recess, the government filed a Supplemental Request for Jury Instruction to counter the defense's interpretation in closing argument of the term "unauthorized."[4] The court did not rule on the motion, but summoned counsel and the court reporter, and took notes while the reporter read back the government's rebuttal argument. Afterwards, both attorneys withdrew, with no further comment from the court or either attorney. "The court assumed that at this point both counsel knew the court was considering a mistrial," the court stated in its later memorandum opinion denying DiPietro's motion to dismiss on double jeopardy grounds. Defense counsel asserts that she assumed the court was preparing the requested curative instruction.

Determining that the government's error had created severe prejudice to the defendant which could not be erased from the minds of the jurors or cured by any instruc-tion, the court declared a mistrial and excused the jury. The court then explained on the record the error and said "the curative instruction wouldn't have cured the way [the government] argued the case." The defendant made no objection to the mistrial, but renewed her Motion for Judgment of Acquittal and then participated with the court and the government in setting a new trial date.

The defendant notified the court and the prosecutor the next day of her intent to file a Motion to Dismiss on grounds of double jeopardy, and 11 calendar days later filed the motion, which the court denied. The defendant appeals this denial.

■ We review *de novo* questions of constitutional law such as a district court's denial of a motion to dismiss the indictment on the ground of double jeopardy.

Appellant claims that the Double Jeopardy clause bars her retrial because the court declared a mistrial *sua sponte* without prior notice to or consultation with appellant's counsel, without a timely indication of why the mistrial was manifestly necessary, and without affording appellant's counsel a timely opportunity to object.

Unquestionably, "[t]he right not to be put twice to the bar is of a very high

---

**4.** The government cited a recent opinion construing the statute to prohibit third-party use of credit cards to defraud the issuer *with the consent of the cardholder,* even though the cardholder originally obtained the card without intent to defraud the issuer. *United States v. Jacobowitz,* 877 F.2d 162, 165–67 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989).

The defense distinguishes *Jacobowitz,* contending that in DiPietro's scam, the cards were used by the cardholders, not third parties, and were used to defraud merchants, not the issuers of the cards or the cardholders.

Both sides suggest that the merits of this issue are significant to the likely outcome if the case went to the jury—the defense contending DiPietro would have been acquitted and the government that she would have been convicted but that such conviction would likely have been overturned on appeal because of the government's prejudicial error. DiPietro argues that the mistrial without her consent deprived her of this likely acquittal in one trial.

The government counters that a mistrial was manifestly necessary since a conviction and its reversal were probable, so a retrial without the defendant's consent does not offend double jeopardy. *Illinois v. Somerville,* 410 U.S. 458, 464, 93 S.Ct. 1066, 1070, 35 L.Ed.2d 425, 431 (1973). The government also contends that the defense "invited" its misuse of the other convictions by incorrectly defining "unauthorized." These are curious contentions. The government conceded at oral argument that at the time it made its wholly inappropriate use of information about accomplice convictions, it had not yet discovered *Jacobowitz*—that is to say, it did not have a better definition to offer than the defendant's so it chose instead to make improper argument and blame the defendant for "inviting" it.

Because we find that the mistrial was not without the defendant's consent, we need not reach the highly doubtful manifest necessity, the construction of the statute, or the applicability of *Jacobowitz* to this case. We have no way to assay the likelihood of conviction.

order." [5] The Fifth Amendment prohibition against double jeopardy is "not against being twice punished, but against being twice put in jeopardy...." [6] It embraces a defendant's "valued right to have his trial completed by a particular tribunal." [7] The complete sentence, however, as formulated by Justice Black in *Wade v. Hunter* [8] recognizes that the right is not absolute: "What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." [9]

Since *United States v. Perez,* [10] the Supreme Court has held that the permissibility of a new trial after a mistrial has been declared *without the defendant's consent* depends on whether there is a "manifest necessity" for the mistrial. [11]

■ We need not reach the question of manifest necessity, however, because the mistrial was not within the *Perez* doctrine, because not declared without the defendant's consent. The manifest necessity test does not apply when the defendant has requested or effectually consented to the mistrial. [12]

The protection of the Double Jeopardy clause is a personal defense that may be waived or foreclosed by a defendant's voluntary actions or choices, including request for or effectual consent to a mistrial. [13]

■ Further, consent to a mistrial may be inferred from silence where a defendant

5. *United States v. Hotz,* 620 F.2d 5, 6 (1st Cir. 1980). *See, also, Arizona v. Washington,* 434 U.S. 497, 503–05, 98 S.Ct. 824, 829–30, 54 L.Ed.2d 717, 726–28 (1978); *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543, 553 (1971); *United States v. Pierce,* 593 F.2d 415, 419 (1st Cir.1979).

6. *Ball v. United States,* 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L.Ed. 300, 302 (1896).

7. *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949); *see also Illinois v. Somerville,* 410 U.S. at 466, 93 S.Ct. at 1071, 35 L.Ed.2d at 432; *United States v. Jorn,* 400 U.S. at 484, 91 S.Ct. at 556, 27 L.Ed.2d at 556; *United States v. Pierce,* 593 F.2d at 419.

8. 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

9. *Id.* at 689, 69 S.Ct. at 837, 93 L.Ed. at 978.

10. 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165 (1824).

11. *Id.* at 579, 6 L.Ed. at 165. *See also United States v. Dinitz,* 424 U.S. 600, 606–07, 96 S.Ct. 1075, 1079–80, 47 L.Ed.2d 267, 273 (1976); *Illinois v. Somerville,* 410 U.S. at 461, 93 S.Ct. at 1069, 35 L.Ed.2d at 429; *United States v. Jorn,* 400 U.S. at 481, 91 S.Ct. at 555, 27 L.Ed.2d at 554; *Wade v. Hunter,* 336 U.S. at 689–90, 69 S.Ct. at 837–38, 93 L.Ed. at 978; *Simmons v. United States,* 142 U.S. 148, 153–54, 12 S.Ct. 171, 172, 35 L.Ed. 968, 971 (1891).

12. *See Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416, 422 (1982) (mistrial at defendant's request); *United States v. Dinitz,* 424 U.S. at 608, 96 S.Ct. at 1080, 47 L.Ed.2d at 274 ("The distinction between mistrials declared by the court *sua sponte* and mistrials granted at the defendant's request *or with his consent* is wholly consistent with the protec-

tions of the Double Jeopardy Clause." (emphasis added)).

13. *United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (guilty pleas and resulting convictions on two separate conspiracy indictments foreclosed double jeopardy challenge that only one conspiracy existed); *Ricketts v. Adamson,* 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (double jeopardy defense waived by defendant's breach of plea agreement); *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (government appeal of dismissal and subsequent new trial not barred by double jeopardy where defendant strategically chose to seek dismissal of two counts of indictment on the basis of preindictment delay, a factor unrelated to guilt or innocence); *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976) (double jeopardy no bar to retrial where defendant successfully moves for mistrial); *U.S. v. Britt,* 917 F.2d 353 (8th Cir.1990) (double jeopardy defense waived by non-compliance with terms of plea agreement which provided that failure to provide truthful information would render agreement void), *cert. denied,* — U.S. —, 111 S.Ct. 971, 112 L.Ed.2d 1057 (1991); *U.S. v. Bauman,* 887 F.2d 546, 549 (5th Cir.1989) (defendant may waive double jeopardy protection by consenting to mistrial), *cert. denied,* — U.S. —, 110 S.Ct. 1128, 107 L.Ed.2d 1034 (1990); *United States v. Miller,* 742 F.2d 1279 (11th Cir.1984) (defendant deemed to have waived double jeopardy claim where she consents to mistrial), *cert. denied,* 469 U.S. 1216, 105 S.Ct. 1194, 84 L.Ed.2d 340 (1985); *Raslich v. Bannan,* 273 F.2d 420, 420–21 (6th Cir.1959) (retrial did not constitute double jeopardy where "appellant and his attorney acquiesced in, and in substantial effect consented to" mistrial).

had the opportunity to object and failed to do so.[14]

For instance, in *United States v. Crosley*,[15] the failure to timely object to a mistrial barred a double jeopardy defense even though defense counsel stated after the Court excused the jury, "I don't mean any disrespect, I assume the record will reflect I do not agree that the jury should be discharged." The attorney's comment was made only after the court declared a mistrial, waited for the deputy clerk to determine whether the jurors were to report the following day, and delivered a short speech to the jurors about civic responsibility and the American legal system. Thus the court held that even if the comment was an objection, it was not timely.[16]

In *United States v. Beckerman*,[17] the court held that the failure to request a sidebar conference or press an objection to a mistrial justified an inference of accord even though trial court did not solicit opinion of defense counsel, and cut off counsel's attempt to offer "a suggestion."[18]

A case very similar to the one at hand is *Camden v. Circuit Court*.[19] There, the defendant's consent was implied where defense counsel remained silent instead of objecting after a mistrial was declared in the presence of the jury.[20] Defense counsel's conduct in responding to the state's attorney's request for resetting of trial by waiving any speedy trial demand and agreeing to a second trial date also was considered by the court strongly suggestive that counsel had impliedly consented to the mistrial ruling.[21] The fact that the only opportunity to object was in the presence of the jury was held irrelevant, since there was no risk of offending the trier of fact by objecting to a mistrial declared due to prejudicial error, as there might be in other circumstances.[22]

The court further stated, "Defense counsel should have anticipated the possibility of a mistrial and been prepared to object or suggest more acceptable alternatives when the trial judge announced his ruling," which had been declared *sua sponte* after a recess to investigate juror bias.[23] The court found it dispositive that the defendant "fail[ed] to object despite having a brief but adequate opportunity to do so."[24]

Even where courts have held that the failure to object did not foreclose a good double jeopardy plea, they have generally done so because there was no opportunity to object.[25] For instance, in *United States*

---

14. *See, e.g., United States v. Buljubasic*, 808 F.2d 1260, 1265–67 (7th Cir.) (silence will be construed as consent when judge proposes mistrial and invites comment), *cert. denied*, 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987); *United States v. Puleo*, 817 F.2d 702, 705 (11th Cir.) (consent implied where trial judge expressed clear intent to declare mistrial and defense counsel had opportunity to object but did not), *cert. denied*, 484 U.S. 978, 108 S.Ct. 491, 98 L.Ed.2d 489 (1987); *United States v. Goldstein*, 479 F.2d 1061, 1067 (2d Cir.) (defendant failed to object despite opportunity to do so), *cert. denied*, 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973); *United States v. Phillips*, 431 F.2d 949 (3d Cir.1970) (failure to raise timely objection to mistrial where jury is deadlocked precludes later claim of double jeopardy).

15. 634 F.Supp. 28 (E.D.Pa.1985), *aff'd* 787 F.2d 584 (3d Cir.1986).

16. *Id.* at 31.

17. 516 F.2d 905 (2d Cir.1975).

18. *Id.* at 908–09.

19. 892 F.2d 610 (7th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1954, 109 L.Ed.2d 316 (1990).

20. *Id.* at 615.

21. *Id. See also, United States v. Smith*, 621 F.2d 350, 352 (9th Cir.1980) (consent implied where, after court declared mistrial *sua sponte*, defense counsel did not object but engaged in planning for new trial), *cert. denied*, 449 U.S. 1087, 101 S.Ct. 877, 66 L.Ed.2d 813 (1981).

22. *Camden*, 892 F.2d at 615 n. 6.

23. *Id.* at 618.

24. *Id.* at 619.

25. *See, e.g., United States v. Jorn*, 400 U.S. 470, 487, 91 S.Ct. 547, 558, 27 L.Ed.2d 543, 558 (1971) (no consent where trial judge acted so abruptly in declaring mistrial *sua sponte* there was no opportunity to object); *United States v. Bates*, 917 F.2d 388 (9th Cir.1990) (no implied consent to mistrial because no opportunity to object where court did not even answer defen-

*v. White,*[26] the Court of Appeals for the Sixth Circuit held that the failure of a defendant to object to a mistrial requested by his codefendant did not waive double jeopardy as a bar to a new trial, because the defense had no time to object to the mistrial. The mistrial ruling came as a surprise and the court dismissed the jury immediately after a bench conference.[27]

■ Here, on the other hand, the error occurred several hours before the declaration of a mistrial. Although the court did not explicitly notify counsel that it was considering a mistrial, the error and the fact that the court was considering how to deal with it were not surprises.

Defense counsel was arguably on inquiry notice when the court summoned the attorneys for conference and reviewed the erroneous government argument to the jury. She "should have anticipated the possibility of a mistrial and been prepared to object or suggest more acceptable alternatives when the trial judge announced his ruling." [28]

Even absent such a reasonable expectation, there was ample opportunity to object when the mistrial decision was declared by the trial court.

But defense counsel did not object. For several minutes after the decision was announced, she and the government counsel and the trial judge remained in the courtroom. She listened to the court's record explanation of the reason for a mistrial and did not object. She formulated and stated a motion for judgment of acquittal and did not object to the mistrial. Finally, she consulted her calendar and discussed with the court and government counsel acceptable dates for a new trial, and scheduled the trial. But she did not object to the mistrial.[29]

Had an objection been registered, the court could have reconsidered its decision. Although the jury was dismissed when the mistrial was declared, upon an immediate objection, the court could have asked the jury to remain while reconsidering its decision. The trial judge did not precipitously leave, but remained to discuss with the government the error and to set a new trial date, with the participation of defense counsel. Given no hint that the defendant desired her fate to be entrusted to this particular, and perhaps severely prejudiced jury, the court did not have to consider any such undisclosed wishes, and could not be expected to guess that the mistrial was "over her objections."

While the term "waiver" is sometimes used in a double jeopardy context in reference to a defendant's request for or consent to a mistrial, the Supreme Court made clear in *United States v. Dinitz,*[30] its rejection in such cases of a waiver theory analogous to the requirement that waiver of the Sixth Amendment right to counsel must be knowing, voluntary and intelligent.[31] Instead the Court said that "[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be

---

dants as he left the bench when they requested a hearing after court ordered a mistrial); *Lovinger v. Circuit Court,* 845 F.2d 739 (7th Cir.) (failure to object not construed as consent because no opportunity to object: "It appears from the record that the judge actually left the courtroom as he finished his statement. He was gone before the defense had any reasonable opportunity to consider the import of his statement and act upon it." *Id.* at 744), *cert. denied,* 488 U.S. 851, 109 S.Ct. 136, 102 L.Ed.2d 108 (1988); *United States ex rel. Russo v. Superior Court,* 483 F.2d 7, 17 (3d Cir.) (defendant not penalized for failure to object to a mistrial *where the declaration of the mistrial came as a surprise*), *cert. denied,* 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973).

**26.** 914 F.2d 747 (6th Cir.1990).

**27.** *Id.* at 753–54.

**28.** *Camden v. Circuit Court,* 892 F.2d 610, 618 (7th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1954, 109 L.Ed.2d 316 (1990).

**29.** *See id.* at 615; *United States v. Smith,* 621 F.2d 350, 352 (9th Cir.1980) (consent implied where, after court declared mistrial *sua sponte,* defense counsel did not object but engaged in planning for new trial), *cert. denied,* 449 U.S. 1087, 101 S.Ct. 877, 66 L.Ed.2d 813 (1981).

**30.** 424 U.S. 600, 608–09, 96 S.Ct. 1075, 1080, 47 L.Ed.2d 267, 274–75 (1976).

**31.** *See Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

followed...."[32] By choosing to consent to the court's declaration of a mistrial, DiPietro has retained that control. Her retrial is not barred by double jeopardy.

Our decision in *United States v. Rivera*[33] is not to the contrary. In *Rivera*, we held that a defendant's failure to plead a defense of double jeopardy at a second trial did not constitute knowing waiver of his constitutional right, where his conviction was vacated and he was re-indicted after it was discovered that the indictments had been returned by a grand jury whose term had expired. There is a substantial, non-technical difference between, on the one hand, failing to oppose a mistrial, thereby foregoing the opportunity to construct a double jeopardy plea should the mistrial be declared, and on the other hand, failing to plead or assert an already matured double jeopardy plea as in *Rivera*.

DiPietro has not made out a valid double jeopardy plea and therefore may be retried.

AFFIRMED.

---

**32.** 424 U.S. at 609, 96 S.Ct. at 1080, 47 L.Ed. at 275.

**33.** 872 F.2d 507 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 71, 107 L.Ed.2d 38 (1989).