**UNITED STATES of America,**
**Appellee,**

v.

**Angel RODRIQUEZ, Edgardo V. Baez, Faustino Delarosa, Alejandro Paulino, Kenneth Rodriguez Defendants,**

**Juan Santos, Defendant–Appellant.**

**No. 04–0697–CR.**

United States Court of Appeals,
Second Circuit.

Nov. 4, 2004.

David N. Kelley, United States Attorney for the Southern District of New York (Stephen A. Miller and Laura Grossfield Birger), New York, NY, for Appellee, of counsel.

Gregory C. Smith, Gregory Smith & Associates, New York, NY, for Defendant–Appellant.

Present: WINTER, KATZMANN, and RAGGI, Circuit Judges.

## SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be and hereby is **AFFIRMED.**

Defendant-appellant appeals from the judgment of the United States District Court for the Southern District of New York (Patterson, *J.*), convicting him, following a five-day jury trial, of conspiracy to commit robbery in violation of 18 U.S.C. § 1951 ("the Hobbs Act") and sentencing him to 57 months of imprisonment, 3 years of supervised release, and $100 mandatory special assessment. We assume the parties' familiarity with the underlying facts and procedural history of the case. For the reasons that follow, we affirm the judgment of the district court.

Santos advances three arguments on appeal. Santos's first argument is that there was insufficient evidence to support a conviction under the Hobbs Act and that

"the jury in this case had a plethora of doubts." We disagree.

"We review *de novo* a challenge to the sufficiency of the evidence." *United States v. Griffith,* 284 F.3d 338, 348 (2d Cir.2002). "A defendant challenging a conviction based on a claim of insufficiency of the evidence bears a heavy burden." *United States v. Wilkerson,* 361 F.3d 717, 724 (2d Cir.2004). We consider the evidence presented at trial "in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." *Griffith,* 284 F.3d at 348. We view this evidence "in its totality," rather than in isolation; however, we "may not substitute our own determinations of credibility or relative weight of the evidence for that of the jury." *Wilkerson,* 361 F.3d at 724 (quotation marks omitted). Instead, "[w]e defer to the jury's determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of the competing inferences that can be drawn from the evidence." *Id.* Thus, "we will not disturb a conviction on grounds of legal insufficiency of the evidence at trial if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted). "These principles apply to both direct and circumstantial evidence." *Griffith,* 284 F.3d at 348.

To establish conspiracy to commit robbery in violation of the Hobbs Act, the government must prove that Santos (1) knowingly agreed with at least one other person; (2) to unlawfully take or obtain personal property from or in the presence of another person, against his will, by means of actual or threatened force; (3)

which obstructed, delayed, or affected interstate commerce. *See* 18 U.S.C. § 1951(a), (b)(1). Santos only challenges the sufficiency of the evidence supporting a finding that there was an agreement. Thus, this Court's review is confined to determining whether a rational trier of fact could have found beyond a reasonable doubt that Santos knowingly agreed to engage in robbery.[1]

We conclude that in this case there was sufficient evidence introduced at trial for a rational trier of fact to have found beyond a reasonable doubt that Santos was a knowing participant in the charged Hobbs conspiracy. First, a jury could infer Santos's knowledge that Alejandro Paulino would likely receive a quantity of drugs on May 20, 2002, from the fact that Santos accompanied Paulino to two meetings with the undercover agent who posed as a drug supplier on both May 17, 2002 and May 20, 2002. Second, Santos's own post-arrest statements established a link between him and Alejandro Rodriguez, a conspirator who participated directly in the attempted May 20, 2002 drug robbery. Indeed, Santos admitted that after the May 17 meeting, he and Rodriguez discussed the likelihood that Paulino's activities involved a drug transfer. That Santos was acting in knowing criminal concert with Rodriguez at the time of the robbery on May 20 could reasonably be inferred from the obvious coordination between Santos's departure from and the robbers' arrival at the drug transfer scene. Further, documentary evidence established that Santos was the individual named "Polo" with whom Rodriguez was in communication at key moments during the conspiracy. When the totality of this evidence is viewed in the light most

---

1. Santos claims that the government must also prove an " 'overt act' by one or more members of the conspiracy in furtherance of the conspiracy." In fact, the overt-act element required under the general conspiracy statute, 18 U.S.C. § 371, *see United States v. Reyes,* 302 F.3d 48, at 53 (2d Cir.2002), does not apply to the Hobbs Act, *see United States v. Clemente,* 22 F.3d 477, 480 (2d Cir.1994).

favorable to the government, we must conclude that a rational trier of fact could have found beyond a reasonable doubt that Santos knowingly agreed to engage in robbery.

█ Santos's second argument is that his retrial subjected him to double jeopardy because (1) Judge Duffy abused his discretion when he concluded that he was obliged to declare a mistrial based on the jury's disclosure that it was split eleven to one in its deliberations, and (2) Santos never consented to a mistrial. Preliminarily we reiterate what we have said in other cases: district courts enjoy broad discretion in deciding when to declare a mistrial because of a hung jury, *see, e.g., White v. Keane,* 969 F.2d 1381, 1382–83 (2d Cir. 1992), and that discretion is not abused by opting to give an *Allen* charge rather than to declare a mistrial where the identity of a single holdout juror has been disclosed, *see United States v. Crispo,* 306 F.3d 71, 76–77 (2d Cir.2002). We need not pursue this point further in this case, however, because the record indicates that Santos consented to the declaration of a mistrial.

The Double Jeopardy Clause of the Fifth Amendment prohibits the government from trying a defendant for the same crime twice. *See* U.S. CONST. amend. V. However, an exception to the rule prohibiting double jeopardy exists if the defendant consents to a mistrial in the first trial, *United States v. Goldstein,* 479 F.2d 1061, 1066 (2d Cir.1973), or if there is "an instance of 'manifest necessity' which permitted a trial judge to terminate the first trial and retry the defendant, because 'the ends of public justice would otherwise be defeated.'" *Richardson v. United States,* 468 U.S. 317, 323–34, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984) (quoting *United States v. Perez,* 9 Wheat. 579, 22 U.S. 579, 580, 6 L.Ed. 165 (1824)). "Consent [to a mistrial] need not be express, but may be implied from the totality of circumstances attend-

ant on a declaration of mistrial." *Goldstein,* 479 F.2d at 1067. However, we do not presume consent from the mere "absence of an express objection to discharging the jury." *Id.* at 1067 n. 11. Instead, "failure to object is one of the several probative factors ... from which consent may be implied." *Id.*

We have held that where the defendant had an opportunity to make an objection to the trial court's declaration of a mistrial, yet did not object, the defendant implicitly consented to a mistrial. *United States v. Beckerman,* 516 F.2d 905, 909 (2d Cir. 1975). In *Beckerman,* after the trial court informed the parties that it was going to declare a mistrial, defendant's counsel requested that the court again charge the jury on the relevant burden of proof. *Id.* at 908. The court denied counsel's request. *Id.* After a declaration of mistrial, defendant moved to dismiss the indictment against him and argued that retrial would subject the accused to double jeopardy; the court denied defendant's motion. *Id.* at 905–06. On appeal, we concluded that defendant had not been deprived of an opportunity to object. *Id.* at 909. We reasoned,

The appellant's argument that the discharge of the jury was so hasty that he had no opportunity to make a considered objection, is not borne out by the record. Before the jury was dispersed, the appellant took the opportunity to request that the jury be reinstructed on the burden of proof.... Although the defense was not totally still, it was silent on the prospect of a mistrial and nothing was said to dispel the inference of accord.

*Id.* (internal footnote omitted). Thus, we concluded defendant had implicitly consented to a retrial. *See id.*

The facts of this case similarly warrant the conclusion that defendant implicitly consented to a mistrial. Here, Santos's

attorney made an application for bail pending retrial, which similarly indicates that counsel had an opportunity to object to the trial court's declaration of a mistrial. In addition, unlike counsel's request in *Beckerman*, which suggested that the defendant had some reservations about a mistrial, Santos's counsel's intervening conduct further indicate that Santos acquiesced to the trial court's declaration of a mistrial. An application for bail pending retrial necessarily contemplates a second trial. Thus, if Santos objected to retrial, he logically would have objected before (or at least contemporaneously with) the application for bail. But Santos made no objection *at all.* He was absolutely "silent on the prospect of a mistrial," *id.,* and thus, we conclude Santos consented to a mistrial.

Because we conclude that Santos consented to a mistrial, we do not consider whether there was "manifest necessity" or the "ends of public justice" warranted terminating the first trial.

■ Finally, Santos argues that the trial judge should not have imposed a three-level enhancement under the Sentencing Guidelines because Santos could not foresee that his co-conspirators would possess a dangerous weapon during the robbery. "At sentencing, disputed factual allegations must be proven by the government by a preponderance of the evidence—meaning that they are more likely than not true— and we review a district court's factual determinations underlying its application of the Sentencing Guidelines for clear error." *United States v. Rizzo,* 349 F.3d 94, 98 (2d Cir.2003) (internal citations omitted); 18 U.S.C. § 3742(e) (stating that appellate courts "shall accept the findings of fact of the district court unless they are clearly erroneous"). "A finding of fact is clearly erroneous only if the appellate court is left with the definite and firm conviction that a mistake has been commit-

ted." *Rizzo,* 349 F.3d at 98. (internal quotation marks and citation omitted). Thus, we are asked "to determine whether the district court's account of the evidence is plausible in light of the record viewed in its entirety." *Id.*

In this case, the district court plausibly could have concluded that it was foreseeable to Santos that his co-conspirators would possess a dangerous weapon during the commission of a robbery. As Judge Patterson explained, "[I]t is reasonably foreseeable for someone I think who engages in a ripoff of—or robbery of other persons to believe that there's a likelihood that dangerous weapons would be present during the offense." In addition, because the conspirators planned not merely to steal, but to steal drugs from a drug courier, it was even more likely that Santos's co-conspirators would possess a dangerous weapon. Thus, in determining Santos's sentence, the district court did not clearly err when it concluded that possession of a dangerous weapon by Santos's co-conspirators was foreseeable.

We hereby accordingly **AFFIRM** the judgment of the district court.

The mandate in this case will be held pending the Supreme Court's decision in *United States v. Booker,* — U.S. —, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004), and *United States v. Fanfan,* — U.S. —, 125 S.Ct. 12, 159 L.Ed.2d 838 (2004) (mem.). Should any party believe there is a need for the district court to exercise jurisdiction prior to the Supreme Court's decision, it may file a motion seeking issuance of the mandate in whole or in part. Although any petition for rehearing should be filed in the normal course pursuant to Rule 40 of the Federal Rules of Appellate Procedure, the court will not reconsider those portions of this order that address Santos's sentence until after the Supreme Court's decision in *Booker* and *Fanfan.* In that regard, the parties will have until

**28**

14 days following the Supreme Court's decision to file supplemental petitions for rehearing in light of *Booker* and *Fanfan*.