UNITED STATES of America, Appellee,

v.

**Elice RIZZO, Defendant–Appellant.**

**Docket No. 02–1436.**

United States Court of Appeals, Second Circuit.

Argued: June 2, 2003.

Decided: Nov. 14, 2003.

Steven D. Feldman, Assistant United States Attorney, (Andrew J. Ceresney, Assistant United States Attorney, on the brief), for James B. Comey, United States Attorney for the Southern District of New York, for appellee.

David A. Lewis, The Legal Aid Society, Federal Defender Division, Appeals Bureau, for defendant-appellant.

Before: SACK, SOTOMAYOR, Circuit Judges, and DANIELS, District Judge.*

DANIELS, District Judge.

Defendant-appellant Elice Rizzo ("Rizzo") appeals from a judgment of the United States District Court for the Southern District of New York (Denny Chin, Judge), entered on July 22, 2002, sentencing her, *inter alia*, to 37 months imprisonment for bank and identification fraud. As part of its sentencing decision, the district court applied a two level enhancement pursuant to Section 2B1.1(b)(3) of the United States Sentencing Guidelines ("U.S.S.G" or "Guidelines")[1] because it found that Rizzo

---

* The Honorable George B. Daniels, of the United States District Court for the Southern District of New York, sitting by designation.

1. References are to the 2001 Sentencing Guidelines, which were in effect when Rizzo was sentenced on July 17, 2002.

had engaged in "jointly undertaken criminal activity" that involved "theft from the person of another." Rizzo argues on appeal that the district court's application of the Section 2B1.1(b)(3) enhancement was clearly erroneous because the evidence was insufficient to support its findings. For the reasons discussed below, this Court agrees. We remand for resentencing.

### BACKGROUND

On April 16, 2003, Rizzo pled guilty to an indictment charging her with two counts of bank fraud, in violation of 18 U.S.C. § 1344, and one count of identification fraud, in violation of 18 U.S.C. § 1028(a)(3). In the course of her plea allocution, Rizzo stated that between April 2001 and January 2002, she used false identification at several Citibank and Chase Manhattan Bank branches in Westchester County, Manhattan, and elsewhere in order to make unauthorized withdrawals of money from other people's accounts. Rizzo admitted to obtaining approximately $90,000 from Citibank accounts and approximately $15,000 from Chase Manhattan Bank accounts. Rizzo also admitted to using altered identification documents of other persons, specifically driver's licenses and credit cards, to commit these acts.

The presentence report ("PSR") prepared by the Probation Department in advance of Rizzo's sentencing determined that the applicable guideline range was 24 to 30 months imprisonment, based on Rizzo's criminal history category of IV and a total offense level of 13. The PSR calculated Rizzo's total offense level utilizing: (a) a base offense level of six, pursuant to U.S.S.G. § 2B1.1(a), for the charged offense; (b) an eight level enhancement, pursuant to U.S.S.G. § 2B1.1(b)(1)(E), because the amount of loss exceeded $70,000; (c) a two level enhancement, pursuant to U.S.S.G. § 2B1.1(b)(9), for the possession of more than five means of identification produced from another means of identification; and (d) a reduction of three levels, pursuant to U.S.S.G. § 3E1.1(a), for acceptance of responsibility.

The Probation Department declined to recommend a two level enhancement for an offense involving "theft from the person of another," pursuant to U.S.S.G. § 2B1.1(b)(3), which the government had argued was appropriate because Rizzo's offense "involved the use of identification cards stolen directly from the victims' persons." (Letter from Steven D. Feldman to Probation Officer Jefferies of 7/5/02, at 1.) [J.A. at A66] The Probation Department disagreed, noting that the government had "not provided any evidence directly relating that the defendant was involved in the theft of stolen property from the person of another." PSR at 21. The Probation Department also noted that it was just as likely that Rizzo "bought the stolen property from someone or found them." *Id.* Because of the lack of "concrete information regarding these thefts," the Probation Department concluded that the enhancement was unwarranted. *Id.*

At sentencing, the government objected to the PSR and requested that the Court apply the "theft from the person of another" enhancement. The government conceded that it had no evidence that Rizzo herself had stolen the documents from another person. It argued, however, that Rizzo was involved in a jointly undertaken criminal activity involving such thefts and that Rizzo was responsible for them as "reasonably foreseeable acts and omissions in furtherance of the jointly undertaken criminal activity" that constituted relevant conduct under U.S.S.G. § 1B1.3(a)(1)(B).

In support of its argument, the government pointed to evidence concerning one of Rizzo's victims (identified here as Victim

# 2). Victim # 2, according to the PSR, reported her credit card stolen on October 3, 2001, six months after Rizzo began her fraudulent scheme. The PSR did not indicate nor was any evidence introduced concerning the manner in which Victim # 2's credit card was stolen or, more specifically, whether or not it was taken from her person. Twenty-three days after the theft, however, on October 26, 2001, Rizzo used an altered version of Victim # 2's driver's license to withdraw money from her Citibank account. (Letter Br. from Steven D. Feldman to Chin, *J.* of 7/15/02, at 6.) [J.A. at A79] Two days later, on October 28, 2001, Rizzo was arrested and found in possession of Victim # 2's credit card and the altered driver's license. *Id.*

In addition to the evidence concerning Victim # 2, the government pointed to the fact that Rizzo used driver's licenses from seven different bank customers over a nine-month period, indicating, in its view, that Rizzo's actions were part of a larger criminal scheme. *Id.* The government also argued that "[d]river's licenses are generally kept in wallets and purses, and common sense dictates that these items are commonly stolen through purse-snatchings or pickpocketing." *Id.* at 6–7. [J.A. at A79–A80]

Persuaded by the government's arguments, the Court concluded that "[a]lthough there is no direct evidence[,] there is strong circumstantial evidence that there were thefts from the persons of others." (Tr. of Sentencing at 8.) [J.A. at A41] While the district court recognized that "there is no evidence that Ms. Rizzo was personally involved in the thefts," it found that "there was jointly undertaken criminal activity." *Id.* at 9. [J.A. at A42.]

The district court based its conclusions on several facts presented by the government. It noted that Rizzo obtained identification documents from seven different

victims and that Rizzo's offense occurred within a time period of only nine months, *id.* at 8–9, [J.A. at A41] accepting the government's reasoning that "given that it happened with respect to seven victims over a nine-month period of time that it's not an accident or coincidence that [Rizzo] must have been working with someone, the pickpocket or thief at a minimum." *Id.* at 5. [J.A. at A38] In addition, the district court reasoned that the type of identification documents obtained—driver's licenses and credit cards—"are things that people are careful about." *Id.* at 9. [J.A. at A42] Finally, in a clear reference to Victim # 2, the district court relied upon the brief timing between the alleged theft of the documents and the point at which Rizzo attempted to use them. *Id.* [J.A. at 42]

Upon concluding from these facts that Rizzo was involved in a jointly undertaken criminal activity that involved the theft of documents from the persons of others, the district court found that the theft of documents was foreseeable to Rizzo. The district court reasoned that the person or persons involved in Rizzo's scheme knew that if they obtained identification documents and provided them to Rizzo, she would use them to get money from the victims' bank accounts. *Id.* [J.A. at 42] As a result, the district court applied Section 2B1.1(b)(3). It increased Rizzo's offense level by two and calculated Rizzo's total offense level at 15, resulting in a revised guideline range of 30 to 37 months imprisonment.

After the district court's determination of the applicable guideline range and before its actual imposition of sentence, one of Rizzo's other victims (identified here as Victim # 3) testified. Although Victim # 3's testimony was not directed at the Section 2B1.1(b)(3) enhancement issue, she testified that her wallet had been stolen a year-and-a-half before Rizzo withdrew

money from her accounts using false identification documents. Like Victim #2, however, Victim #3 did not identify the manner in which her wallet was taken. (Tr. of Sentencing at 17.) [J.A. at A50] Victim #3 also stated that investigators originally assumed that Rizzo had obtained access to her information in some manner unconnected to the year-and-a-half old theft and that they ultimately never determined how Rizzo obtained her information. *Id.* Rizzo's counsel requested that the Court reconsider its ruling on the two level enhancement in light of Victim #3's statements. The Court denied that application.

Thereafter, the Court imposed a sentence at the top of the revised guideline range, sentencing Rizzo to 37 months imprisonment, five years supervised release, a special assessment of $300, and restitution in the amount of $92,105. On July 19, 2002, Rizzo filed a timely notice of appeal.

### DISCUSSION

■ On appeal, Rizzo challenges the sufficiency of the evidence to support the district court's application of the U.S.S.G. § 2B1.1(b)(3) enhancement. At sentencing, disputed factual allegations must be proven by the government by a preponderance of the evidence, *United States v. Lee,* 818 F.2d 1052, 1057 (2d Cir.1987)—meaning that they are more likely than not true—and we review a district court's factual determinations underlying its application of the Sentencing Guidelines for clear error. *United States v. Szur,* 289 F.3d 200, 215 (2d Cir.2002); 18 U.S.C. § 3742(e) (stating that appellate courts "shall accept the findings of fact of the district court unless they are clearly erroneous").

A finding of fact is clearly erroneous only if the appellate court is left "with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct.

1504, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948) (internal quotation marks omitted)). In other words, our role as the reviewing court under this extremely deferential standard of review is not to decide disputed factual issues *de novo* or to reverse simply if we would have decided the case differently, but rather to determine whether the district court's account of the evidence is plausible in light of the record viewed in its entirety. *Id.* at 573–74, 105 S.Ct. 1504. Thus, a district court's choice between two permissible views of the evidence cannot be clearly erroneous. *Id.* at 574, 105 S.Ct. 1504. In this case, however, the district court could not plausibly have found, based on the government's evidence, that Rizzo's offense involved "jointly undertaken criminal activity" including theft from the person of another. We therefore hold that the district court's application of the "theft from the person of another" sentencing enhancement was clearly erroneous.

Section 2B1.1(b)(3) of the Guidelines requires that a defendant's offense level be enhanced by two levels "[i]f the offense involved a theft from the person of another." U.S.S.G. § 2B1.1(b)(3). To apply, the defendant's offense must have involved "theft, without the use of force, of property that was being held by another person or was within arms' reach." U.S.S.G. § 2B1.1, Application Note 1. The commentary lists examples of such theft as pickpocketing and non-forcible purse-snatching. *Id.*

The term "offense" as used in Section 2B1.1(b)(3) is defined by the Guidelines to mean "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct)." U.S.S.G. § 1B1.1, Application Note 1(k). Thus the defendant may be held responsible for relevant conduct stem-

ming, not only from his or her own actions, but also, "in the case of a jointly undertaken criminal activity, . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). A defendant may be held accountable for the conduct of others only if such conduct was "in furtherance of the jointly undertaken criminal activity; and . . . reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3, Application Note 2. In making this determination, a court "must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake." *Id.*

Therefore, in order for the two level enhancement to properly apply under the circumstances in this case, the government was required to prove (and the district court found) that it was more likely than not, with regard to at least one of Rizzo's seven victims, that: (1) the documents used by Rizzo were obtained by a third party through pick-pocketing, purse-snatching, or other theft from the person; (2) Rizzo had entered into an agreement with the third party to obtain the identification documents; (3) the third party's theft of documents was in furtherance and within the scope of Rizzo's agreement; and (4) the third party's theft of documents was reasonably foreseeable to Rizzo.

■ Before turning to the merits, we address the government's argument that Rizzo waived her right to appeal the § 2B1.1(b)(3) enhancement by failing to object to relevant portions of the PSR. At sentencing, a district court "may accept any undisputed portion of the presentence report as a finding of fact." Fed. R.Crim. Pro. 32(i)(3)(A). Moreover, if a defendant fails to challenge factual matters contained in the presentence report at the time of sentencing, the defendant waives the right

to contest them on appeal. *United States v. Feigenbaum*, 962 F.2d 230, 233 (2d Cir. 1992).

■ The government argues that Rizzo failed to dispute an assertion in her PSR specifically indicating that the documents and/or information she used were obtained through theft from another person. Although the PSR did not contain information concerning how Victim # 2's credit card or the wallet of another victim who was not discussed during sentencing was stolen, it contained an unattributed assertion that "at some point prior to the offenses charged herein, the victims' pocket books were snatched from their person." PSR ¶ 25. Despite this assertion, the PSR concluded that the evidence was insufficient to support the government's requested enhancement. The government argues that Rizzo waived her right to contest the PSR's assertion on appeal by failing specifically to object to it, effectively conceding that the victims' pocketbooks had been taken from their persons and relieving the government of the responsibility of submitting any additional evidence on the matter.

Rizzo, however, did contest the assertion that the documents she used were taken from the persons of her victims. In response to the government's request that the Probation Department include the Section 2B1.1(b)(3) enhancement in the PSR, Rizzo's counsel submitted a letter noting that theft from another implicates "enhanced sentencing because of the increased risk of physical injury" and asserting that "[t]here is no evidence that Ms. Rizzo imposed any risk or harm on the victims." (Letter from Jennifer Brown to Probation Officer Jefferies of 7/10/02, at 2) (quoting the *"Background"* Application Note to U.S.S.G. 2B1.1) (internal quotation marks and emphasis omitted). [J.A. at A70] The letter also pointed to caselaw holding that the thefts must take place

within reach of the victims to satisfy Section 2B1.1(b)(3). *Id.* The Probation Department ultimately agreed with Rizzo's position and, in rejecting the government's request for a Section 2B1.1(b)(3) enhancement, specifically noted that "the defendant could have bought the stolen property from someone or found them." PSR at 21. Therefore, Rizzo was under no obligation to object more specifically to the PSR. Moreover, at sentencing, Rizzo's counsel did object to the Section 2B1.1(b)(3) enhancement and suggested that the documents used by Rizzo may have been taken through means other than theft from the person prior to the district court's ruling. (Tr. of Sentencing at 7.) [J.A. at A40] We thus reject the government's waiver argument.

■ Turning to the merits, we find that the district court's conclusion that the documents used by Rizzo were obtained through theft from the person of another was clearly erroneous. As noted above, Section 2B1.1(b)(3) is applicable only if Rizzo's offense involved theft, without use of force, of property that was being held by another person or was within arm's reach of that person. The government, however, did not produce evidence from any of Rizzo's seven victims indicating that documents were taken from their persons. The only victim who testified at sentencing, Victim # 3, offered no evidence regarding either how her wallet was stolen or how Rizzo came to receive and use her personal information more than a year later. Similarly, there was no evidence of how Victim # 2's documents were stolen, and the short time period between their theft and use does not suggest any conclusion about how they were taken. The government additionally suggests that the fact that Rizzo used documents relating to seven different individuals during a nine-month time period makes it more likely that at least one was a victim of a pickpocket or purse-snatcher. The mere fact that Rizzo had a large number of victims within the short time period, however, does not establish how the victims' documents or information were obtained.

Nor is the government's "theft from the person of another" claim made more likely by the district court's reasoning that driver's licenses and credit cards are "things that people are careful about." (Tr. Sentencing at 9.) [J.A. at A42] Although these kinds of documents are generally kept in wallets and purses, wallets and purses are also often misplaced, lost, or left in unattended areas where they can be easily taken. Nothing presented by the government makes these alternative methods of theft any more or less probable than the one suggested to the district court.

■ We also find that the government's evidence could not have proven that Rizzo engaged in joint criminal activity. In order to impose liability for jointly undertaken criminal activity under Section 1B1.3(a)(1)(B), the government must prove by a preponderance of the evidence the existence of "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others." U.S.S.G. § 1B1.3(a)(1)(B); *see also United States v. Studley*, 47 F.3d 569, 573 (2d Cir.1995) ("[T]he first question for a court applying [Section 1B1.3(a)(1)(B) ] is whether the defendant participated in jointly undertaken criminal activity."). The district court must essentially find a conspiratorial relationship "whether or not charged as a conspiracy." U.S.S.G. § 1B1.3(a)(1)(B) & Application Note 2. "As a matter of law, [a] conspiracy must involve the agreement of two or more persons to commit a criminal act or acts." *United States v. Gore*, 154 F.3d 34, 40 (2d Cir.1998). As a result, although a conspiratorial relationship may be proven by cir-

cumstantial evidence, *United States v. Hendrickson,* 26 F.3d 321, 333 (2d Cir. 1994), in cases where a defendant's sentence is enhanced because he or she engaged in jointly undertaken criminal activity with one or more unknown persons "the evidence must at least demonstrate the existence of the unknown co-conspirators and their complicity." *Gore,* 154 F.3d. at 41.

The facts presented by the government and relied upon by the district court in this case cannot prove the existence of a joint criminal undertaking. The only facts that could conceivably support the district court's finding are: (1) the fact that Rizzo utilized documents from seven different victims over a nine-month period; (2) the facts and circumstances surrounding Rizzo's use of documents relating to Victim # 2 shortly after they were stolen; and (3) the fact that the victims all came from the same two banks. This evidence, however, cannot lead to the district court's finding of jointly undertaken criminal activity because, given a set of equally valid assumptions, it is totally consistent with a variety of scenarios. The fact that Rizzo obtained documents relating to seven different victims in a nine-month period, for example, is equally consistent with numerous non-"joint" possibilities. Rizzo may have received the documents from one or several suppliers. Alternatively, however, Rizzo may have indirectly obtained the docu-ments herself through various means—i.e., she may have had access to unattended property, forged documents based on information she gathered through some other means, or purchased the documents on the black market. None of these alternative scenarios are made more or less likely by the number of victims and the length of the crime. *See Gore,* 154 F.3d at 40 ("Without more, the mere buyer-seller relationship . . . is insufficient to establish a conspiracy.").

Furthermore, the evidence concerning Victim # 2 does not bolster the government's claim that Rizzo engaged in jointly undertaken criminal activity. As we have already noted, nothing in the record indicates how or by whom Victim # 2's documents were stolen. The mere fact that Rizzo used and was caught with Victim # 2's documents weeks after they were taken does not make it more or less likely that Rizzo either obtained the documents on her own or purchased the documents after they were taken by another in an independent offense. Nor does the mere fact that the victims were all Citibank or Chase customers affect the likelihood that Rizzo obtained the documents as part of a conspiracy to steal the documents rather than by another method.[2]

On the basis of the evidence it presented, the government did not meet its bur-

---

**2.** In this regard, the government's reliance on *United States v. Nevels,* 160 F.3d 226 (5th Cir.1998), is misplaced. In *Nevels,* the defendant pled guilty to possession of a stolen social security check and, importantly, admitted both that he had received the stolen check from third parties and that he had been regularly cashing stolen checks for them for some time. *Id* at 229. Nevels' fingerprints had also been found on a letter which was among bundles of mail stolen at gunpoint approximately thirty minutes earlier. *Id.* at 228. The facts in *Nevels* thus more clearly sup-ported that sentencing court's factual finding that the defendant was involved in jointly undertaken criminal activity. The Fifth Circuit then treated evidence concerning the scheme to cash stolen checks as sufficient to show that Nevels should have reasonably foreseen that the checks might be stolen from the person of another. *Id.* at 229. In Rizzo's case, by contrast, absent unsupported, hypothetical inferences, there is no evidence of the existence of either an agreement or any third party.

den of proof to establish that Rizzo's offense more likely than not involved theft from the person of another in jointly undertaken criminal activity.[3] This is not a case in which the district court made a choice among permissible views of the evidence. In light of the record viewed in its entirety, the inferences that the district court was asked to draw were not more likely than other plausible scenarios. We are left with a definite and firm conviction that a mistake has been committed. As a result, we find that the district court clearly erred in applying Sections 1B1.3(a)(1)(B) and 2B1.1(b)(3).

Finally, the government requests that this case be remanded for a *Fatico* hearing in order to allow the government to present additional evidence supporting application of the Section 2B1.1(b)(3) enhancement. We decline to do so. First, the government received ample notice and opportunity to argue and to develop support for its enhancement request prior to the original sentencing and, having failed to meet its burden of proof at the original sentencing, can be deemed to have forfeited any right to additional proceedings. More importantly, given the lack of any evidence of a joint undertaking, a *Fatico* hearing would, at most, establish that one or more of the victims did have documents taken from their person, which would still be insufficient to establish the elements necessary for application of the Section 2B1.1(b)(3) enhancement.

**CONCLUSION**

For the foregoing reasons, we remand to the district court for resentencing without application of Section 2B1.1(b)(3).

---

3. Even if the government had carried its burden of proving the existence of a joint criminal undertaking and actual theft from another person, the district court clearly erred in applying Section 1B1.3(a)(1)(B) because it failed to make any particularized findings regarding the scope of Rizzo's undertaking, as required by this Court. *See United States v. Studley,* 47 F.3d 569, 574 (2d Cir.1995) ("[T]he Guidelines ... require the district court to make a particularized finding of the scope of the criminal activity agreed upon by the defendant."). Additionally, because we find that the government's evidence did not satisfy its burden of proof on the first two elements, it is unnecessary for us to determine whether the unproven agreement contemplated theft from another person or whether such theft was reasonably foreseeable to Rizzo.