SUMMARY ORDER
Defendant-Appellant Betty Peter (“Peter”) appeals from the judgment of the District Court for the Eastern District of New York (Johnson, J.), dated March 19, 2008, sentencing Peter principally to 60 months’ imprisonment, which she is currently serving. Peter argues that her sen *33 tence was both procedurally and substantively unreasonable, and that this Court should remand for resentencing before a different district judge. Specifically, Peter argues that (1) the district court’s factual determination that Peter obstructed the investigation and prosecution of the premeditated murder of her husband, Vernon Peter, was clearly erroneous; and (2) given asserted mitigating circumstances, including, inter alia, Peter’s substantial assistance to the government and resulting U.S.S.G. § 5K1.1 letter, her sentence was substantively unreasonable. For the reasons that follow, we find that both contentions lack merit. We assume the parties’ familiarity with the underlying facts, the procedural history, and the issues presented for review.
I. Procedural Reasonableness
As we have explained:
A district court commits procedural error where it fails to calculate the Guidelines range (unless omission of the calculation is justified), makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory. It also errs procedurally if it does not consider the § 3553(a) factors, or rests its sentence on a clearly erroneous finding of fact. Moreover, a district court errs if it fails adequately to explain its chosen sentence, and must include an explanation for any deviation from the Guidelines range.
United States v. Carera, 550 F.3d 180, 190 (2d Cir.2008) (en banc) (internal quotation marks and citations omitted). The district court finds facts relevant to sentencing based on a preponderance of the evidence standard. See United States v. Garcia, 413 F.3d 201, 220 n. 15 (2d Cir.2005) (“Judicial authority to find facts relevant to sentencing by a preponderance of the evidence survives Booker”). This Court reviews such findings for clear error, see id. at 221-22, and a “finding of fact is clearly erroneous only if the appellate court is left with the definite and firm conviction that a mistake has been committed,” United States v. Rizzo, 349 F.3d 94, 98 (2d Cir.2003) (internal quotation marks omitted).
Peter argues that the district court incorrectly calculated her Guidelines range by adopting the PSR’s recommended offense level of 30 for her fifth count of conviction, tampering with a witness, victim, or informant, namely Anganee Gobin, in violation of 18 U.S.C. § 1512(b)(3).[1] The PSR, the findings of which the district court adopted in full, App. 67, calculated Peter’s offense level as follows. The Guideline applicable to Peter’s 18 U.S.C. § 1512(b)(3) violation is U.S.S.G. § 2J1.2, which instructs that “[i]f the offense involved obstructing the investigation or prosecution of a criminal offense, apply § 2X3.1 (Accessory After the Fact) in respect to that criminal offense ....” U.S.S.G. § 2J1.2(c)(l). Next, U.S.S.G. § 2X3.1 provides for the base offense level to be “6 levels lower than the offense level for the underlying offense,” but further that it “shall not be more than level 30” except in circumstances not relevant here. Id. at § 2X3.1(a)(l)-(a)(3)(A). The PSR concluded that because “the defendant was convicted of, among other things, obstruet- *34 ing the investigation and prosecution of the premeditated murder of Vernon Peter, in aid of racketeering,” PSR ¶ 83, the “underlying offense” was premeditated murder, which has a base offense level of 43, see U.S.S.G. § 2A1.1. Thus, per U.S.S.G. § 2X3.1(a)(8)(A), Peter’s offense level for her violation of 18 U.S.C. § 1512(b)(3) was set at 30. PSR ¶¶ 83-88.
Peter contends that the PSR’s factual determination that she attempted to obstruct the investigation and prosecution of the premeditated murder of Vernon Peter was clearly erroneous in several respects. First, Peter argues that the indictment did not charge her with obstructing a murder investigation. This is incorrect. Peter’s fifth count of conviction charged that Peter
did knowingly and intentionally use and attempt to use intimidation and threaten and attempt to threaten another person, to wit: Anganee Gobin, with intent to hinder, delay and prevent the communication to a law enforcement officer of information relating to the commission and possible commission of a Federal offense, to wit: the crimes charged in Counts One through Four.
App. 36. Count One — the investigation of which Peter was convicted of attempting to obstruct — charged Peter’s brother and son, Ronald Mallay and Baskinand Motil-lal, with racketeering, and specifically with the racketeering act of murdering Vernon Peter.
Peter’s argument that the PSR determined that she intimidated Gobin for reasons other than interfering with the investigation and prosecution of Vernon Peter’s murder, thus rendering its finding that Peter obstructed a murder investigation inconsistent, also fails. The PSR found that Peter “threatened ... Anganee Gobin ... in the course of attempting to avoid detection and responsibility for her involvement in the mail fraud offenses at issue,” PSR ¶ 47, and further, that she should receive an obstruction of justice adjustment with respect to her convictions for mail fraud and money laundering. PSR ¶¶ 77, 81. Peter’s mailings and financial transactions involving her receipt of life insurance proceeds as a result of her husband’s death, however, were unlawful only by virtue of her knowledge that Mal-lay and Motillal had killed him. See App. 34 (“In or about August 1993, the defendant ... PETER ... filed a claimant form relating to the insurance policy on the life of Vern Peter.”). Thus, the PSR’s finding that Peter obstructed investigations relating to her mail fraud and money laundering convictions is not inconsistent with the finding that she also obstructed the investigation into the premeditated murder of Vernon Peter.
Finally, the record supports the factual determination of the PSR that Peter “threatened Anganee Gobin with the intent to prevent the communication to a law enforcement officer of information relating to the crimes charged in Counts One through Four[, including the] conspiracy to murder, and the murder of, Vernon Peter.” PSR Add. 11. Subsequent to Vernon Peter’s murder in July 1993, Peter traveled to Guyana and found out that Mallay and Motillal were responsible for Vernon Peter’s murder. Despite having this knowledge, Peter still submitted a claim on Vernon Peter’s life insurance policy for $400,000 and failed to disclose the involvement of her brother and son in her husband’s murder. Further, Peter does not contest the PSR’s finding that (1) following the arrest of Camuldeen Allie, the triggerman for Vernon Peter’s death, in September 1993, Peter “began providing Camuldeen Allie’s mother ... with monetary payments ... which were supposed to be used to pay for Camuldeen Allie’s defense attorney”; and (2) “[t]his practice of providing financial remuneration to Camul-deen Allie’s family was intended to dis *35 suade Carauldeen Allie from disclosing to law enforcement what he knew about the involvement of others in Vernon Peter’s murder.” PSR ¶ 18. Given all of the above, when Peter threatened Anganee Gobin at a party on September 22, 2002, stating that “she knows who’s responsible for Ronald’s arrest and that was family, and so, she’s crying tears now, but they’ll be crying blood later,” Gov’t App. 85, it was not clear error for the district court to find that Peter intended to obstruct Go-bin’s cooperation with law enforcement concerning the investigation of the premeditated murder of Vernon Peter. The fact that it is unclear whether Gobin knew of the involvement of Motillal and Mallay in Vernon Peter’s murder at the time she was threatened, moreover, does not preclude a finding that Peter intended to obstruct justice when she threatened her.
Thus, the district court’s factual determination that Peter’s violation of 18 U.S.C. § 1512(b)(3) involved the obstruction of the investigation into the premeditated murder of Vernon Peter was not clear error, and the court’s adoption of an offense level of 30 for that offense was not procedural error.
II. Substantive Reasonableness
We undertake substantive reasonableness review “under an abuse-of-discretion standard,” taking “into account the totality of the circumstances, including the extent of any variance from the Guidelines range.” Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007). “The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.” Id.
Based on a base offense level of 30 and criminal history category of I, Peter’s Guidelines range was 97-121 months. Taking into consideration both the government’s U.S.S.G. § 5K1.1 letter and the 18 U.S.C. § 3553(a) factors, the district court found that a 60 month sentence — what the court considered to be a “50 percent reduction in the sentence” — was “sufficient for the crime that was committed.” App. 67. Peter argues that this sentence constituted an abuse of discretion because (1) she has expressed regret and remorse for her actions; (2) after her conviction, she provided substantial assistance to the government regarding the prosecution of her own brother in a capital case, which became the impetus for the cooperation of various other family members; (3) she would have gladly accepted the government’s initial plea offer, which the district court noted probably would have resulted in “time served,” id. 66, but for the coercion and threats of Mallay and other members of his family; and (4) the court did not adequately consider her background, age, and medical condition.
These considerations are insufficient to render the sentence imposed by the district court an abuse of discretion. First, although the government’s § 5K1.1 letter indicates that Peter’s decision not to cooperate immediately after her arrest was partly due to pressure and intimidation from Mallay and the “Mallay Enterprise,” she also “informed agents that the nature of the relationship she had with her brother,” and “her sense of love and loyalty,” were part of the reason she chose not to cooperate. Id. 50-51. Second, the district court took into account Peter’s age and health, indicating that, while “[o]ne hundred and twenty months for a young person is a terrible sentence,” because “Ms. Peter is 68 years old ... it probably would be a death sentence.” Id. 66. Third, Peter’s sentence reflects a substantial departure from her Guidelines range, one that is consistent with due consideration of her substantial government cooperation and personal circumstances. Given that “it is *36 not for the Court of Appeals to decide de novo whether the justification for a variance is sufficient or the sentence reasonable,” Gall, 128 S.Ct. at 602, and that we “must give due deference to the district court’s decision that the § 3553(a) factors, on a whole, justify the extent of the variance,” id. at 597, we cannot say that Peter’s sentence was substantively unreasonable.
III. Conclusion
We have considered all of Peter’s arguments and consider them to be without merit.[2] Thus, Peter’s sentence is AFFIRMED.

. Although Peter’s cooperation agreement contained a waiver of her right to appeal, the government concedes that the district court never questioned Peter on the record regarding her understanding of the waiver, and hence has not moved to dismiss the appeal as waived. Gov’t Br. 7 n. 5; see. United States v. Tang, 214 F.3d 365, 368 (2d Cir.2000) ("[A] waiver of the right to appeal should only be enforced by an appellate court if the record ‘clearly demonstrates' that the waiver was both knowing ... and voluntary.” (alteration in original) (internal quotation marks omitted)). Accordingly, we do not further consider the waiver.

. Because Peter's challenges to her sentence lack merit, we need not consider her argument that she should be resentenced by a different district judge.