22-473-cr (L)
*United States v. Sumpter*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of October, two thousand twenty-three.

Present:

>       BARRINGTON D. PARKER,
>       WILLIAM J. NARDINI,
>              *Circuit Judges*.[*]

---

UNITED STATES OF AMERICA,

>              *Appellee*,

>       v.                                                    22-473-cr (L),
>                                                             22-735-cr (Con)

TYRELL SUMPTER, AKA RELL, AKA
RUGER, MAURICE CURTIS, AKA MO,

>              *Defendants-Appellants*.[†]

---

|  |  |
|---|---|
| For Appellee: | JUN XIANG (Matthew J.C. Hellman, Elinor L. Tarlow, David Abramowicz, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, N.Y. |

---

[*] Because the third judge originally assigned to this panel is recused from this case, the remaining two judges, who are in agreement, issue this order in accordance with Second Circuit Internal Operating Procedure E(b).

[†] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

For Defendants-Appellants:  DANIEL S. NOOTER (Lisa Scolari, Law Office of Lisa Scolari, New York, NY, *on the brief*), Washington, D.C. for Defendant-Appellant Tyrell Sumpter.

Robert J. Boyle, New York, N.Y. for Defendant-Appellant Maurice Curtis.

Appeal from judgments of the United States District Court for the Southern District of New York (Richard J. Sullivan, *Circuit Judge*, sitting by designation).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

This consolidated case is comprised of two appeals, one from Defendant-Appellant Tyrell Sumpter and the other from Defendant-Appellant Maurice Curtis. Because the claims raised by each appellant are distinct, we address each appeal separately below. We assume the parties' familiarity with the case.

**I.    Tyrell Sumpter**

Sumpter appeals from a March 2, 2022, judgment of the United States District Court for the Southern District of New York (Richard J. Sullivan, *Circuit Judge*, sitting by designation), following his guilty plea pursuant to a plea agreement to one count of possessing, using, and carrying firearms, which were brandished and discharged, and aiding and abetting the same, in furtherance of a drug trafficking conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2. The district court sentenced Sumpter to twelve years of imprisonment, followed by five years of supervised release. Sumpter appeals, challenging the sentence as both procedurally and substantively unreasonable.

"We review the procedural and substantive reasonableness of a sentence under a deferential abuse-of-discretion standard." *United States v. Yilmaz*, 910 F.3d 686, 688 (2d Cir. 2018). [1] "A sentence is procedurally unreasonable if the district court . . . selects a sentence based on clearly erroneous facts[.]" *United States v. Vinales*, 78 F.4th 550, 552 (2d Cir. 2023). The district court's "finding of fact is clearly erroneous only if the appellate court is left with the definite and firm conviction that a mistake has been committed." *United States v. Rizzo*, 349 F.3d 94, 98 (2d Cir. 2003). Under this "extremely deferential standard of review," we will affirm the district court's findings of fact if it "is plausible in light of the record viewed in its entirety." *Id.*

When reviewing whether a sentence is substantively reasonable, we are "particularly deferential" and set aside "only those sentences that are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice." *United States v. Muzio*, 966 F.3d 61, 64 (2d Cir. 2020). We are mindful that "[t]he particular weight to be afforded aggravating and mitigating factors is a matter firmly committed to the discretion of the sentencing judge." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012).

### a. Procedural Unreasonableness

Sumpter argues that the district court's sentence is procedurally unreasonable because it is based, in part, on a clearly erroneous finding of fact that Sumpter participated in ordering his co-conspirator, Tyquan Robinson, to be killed. During an evidentiary hearing, the government produced a number of wiretap calls, including one in which Sumpter told his co-conspirator, Tyshawn Burgess, that he had "pressed the button" on Robinson. App'x 221. Sumpter contends

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

that the court erred in reading the phrase "pressed the button" to mean that he authorized Robinson's killing.

We discern no error, much less clear error, in the district court's finding. In a wiretapped call on February 9, 2018, Burgess reported to another co-conspirator, Maurice Curtis, that Sumpter suspected that Robinson was cooperating with law enforcement. In another call, Burgess reiterated that Sumpter thought Robinson was "a rat" and wanted to lure Robinson to be assaulted. During a call a month later, when Burgess reported continuing suspicions of Robinson, Sumpter appeared to state that he would not take action against Robinson unless he saw paperwork proving that Robinson had cooperated. But a week later, on April 11, 2018, Sumpter told Burgess that he believed a co-conspirator had obtained precisely such paperwork; when Burgess denied that the co-conspirator had said that, Sumpter reacted with surprise and said that he had "just pressed the button" on Robinson. Burgess reassured Sumpter that Robinson probably had cooperated. Less than two hours after hearing this tapped call, law enforcement visited Robinson to warn him of the possible threat to his life. Shortly thereafter, Sumpter called Burgess to inform him of law enforcement's visit and convey his suspicions that one of his phones was tapped. When asked why he believed his phone was tapped, Sumpter appeared to speculate that his April 11, 2018, call was the reason for law enforcement's warning to Robinson that people were trying to kill him. Based on these calls, it is certainly plausible—and even obvious—that "pressed the button" meant to put out a hit on someone or, in other words, to order him killed.

Reinforcing this common-sense interpretation of the recorded calls, the government produced additional evidence regarding the meaning of "pressed the button." A law enforcement agent testified that, based on her prior investigations, she knew that "pressed the button" meant to "push the green light and to kill the person," in the sense of giving the approval or go-ahead. App'x

4

at 118. Sumpter claims that the agent's testimony was conclusory and speculative because she was unable to identify exactly from which investigation and from whom she learned the meaning of the phrase. We disagree. The agent testified to her experience as a special agent, noting that she had been involved in "over a hundred" investigations. App'x at 100. The fact that she could not remember exactly from whom or where she learned the meaning of the phrase—which, in any event, becomes clear in the context of all these wiretapped calls—does not suggest that she lacked foundation or credibility on this matter.

### b. Substantive Unreasonableness

Sumpter claims that the district court's sentence was substantively unreasonable for multiple reasons, none of which we find persuasive.

Sumpter argues that the district court placed too much weight on the allegations that he ordered Robinson to be killed, because that conduct was not charged in the indictment and the government allegedly failed to provide him with reasonable notice that it would rely so heavily on those allegations at sentencing. Sumpter raises this argument under the heading of substantive unreasonableness, though it effectively states a procedural claim. However characterized, the claim has no merit. As to the first point, it is well settled that a district court can consider uncharged conduct at sentencing if proven by a preponderance of the evidence. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). As to the second point, Sumpter had ample notice that such allegations would be an issue at sentencing. The plea agreement reserved each party's right to seek a sentence outside the stipulated Guidelines range; the government raised the issue in a filing before sentencing; and Sumpter availed himself of the opportunity to respond fully

5

both during the evidentiary hearing and in his own sentencing submissions. *Cf. United States v. Reiss*, 186 F.3d 149, 156 (2d Cir. 1999) (stating that in the context of a purported Fed. R. Crim. P. 32 violation, a defendant is adequately warned of departures from the applicable Guidelines range when such departures are mentioned "by the [presentence report], by the prosecution's submissions, or by the court sua sponte").

Sumpter also argues that the district court erred by finding that he participated in a shooting in 2016. During the evidentiary hearing, the government introduced a recorded prison call in which Burgess described the shooting, stating that he and Sumpter had participated. Sumpter contends that the district court should not have credited Burgess's statements. But credibility determinations are the province of the district court, and we see no clear error in its findings. As the district court reasoned, Burgess had no incentive to lie about Sumpter's involvement in the shooting, and Burgess's statements were corroborated by evidence that a shooting had occurred around the same time and location that he described.

Sumpter's other arguments concern how the district court weighed certain factors in reaching its sentence. Sumpter first argues that the district court failed to take into account his service of a three-year state sentence for the same conduct underlying the § 924(c) charge in this case. But the district court explained that it had indeed taken that sentence into account; it justifiably gave it little mitigating value, given that Sumpter participated in the 2016 shooting less than a month after he was released from state custody. Sumpter next argues that the district court improperly considered his conduct related to the underlying drug trafficking conspiracy because of its dissatisfaction with the plea agreement. But the district court's sentence reflects nothing more than an appropriate concern to craft a sentence that accurately reflected the totality of Sumpter's conduct.

6

## II. Maurice Curtis

Curtis appeals from a March 28, 2022, judgment of conviction of the United States District Court for the Southern District of New York (Richard J. Sullivan, *Circuit Judge*, sitting by designation), following his guilty plea to a two-count information. Count One charged Curtis with conspiracy to distribute and possess with intent to distribute at least 280 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. Count Two charged him with possessing and aiding and abetting the possession of firearms, which were brandished and discharged, in furtherance of the drug-trafficking conspiracy charged in Count One, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii) and 2. The district court sentenced Curtis to two consecutive sentences of ten years in prison, followed by five years of supervised release. Curtis appeals only his conviction on the § 924(c) charge.

Curtis argues on appeal that there was an insufficient factual basis to show that he intended that a firearm be discharged during a shooting perpetrated by his drug co-conspirators, and so the district court therefore erred in accepting his guilty plea to aiding and abetting a § 924(c) offense based on brandishing and discharging a firearm. As a threshold matter, it appears that Curtis affirmatively waived this argument before the district court. On more than one occasion during the sentencing hearing, the district court asked defense counsel whether there was sufficient evidence to support Curtis's liability for aiding and abetting a firearm discharge. Defense counsel responded that "it was legally sufficient for [Curtis] to plead out to the discharge," App'x at 195, and expressly disclaimed any argument that the ten-year minimum under § 924(c)(1)(A)(iii) did not apply to Curtis. Curtis therefore "intentional[ly] relinquished" the argument that there was an inadequate factual basis for his guilty plea to Count Two, and review of his claim on appeal is wholly foreclosed. *United States v. Olano*, 507 U.S. 725, 733 (1993).

Even if Curtis did not affirmatively waive that argument, he certainly failed to raise it before the district court, and so his unpreserved claim would be reviewable at best for plain error under Federal Rule of Criminal Procedure 52(b). To demonstrate plain error, "an appellant must demonstrate that (1) there was error, (2) the error was plain, and (3) the error prejudicially affected his substantial rights; if such error is demonstrated, we will reverse . . . only when (4) the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Aybar-Peguero*, 72 F.4th 478, 484 (2d Cir. 2023). We discern no error, plain or otherwise, in the district court's determination that a factual basis supported Curtis's guilty plea.

At issue in this appeal is whether there was a sufficient factual basis supporting Curtis's guilty plea to aiding and abetting a firearm discharge in furtherance of a drug trafficking conspiracy, in violation of §§ 924(c)(1)(A)(i)-(iii) and 2. To commit that offense, a defendant must "(1) take[] an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond v. United States*, 572 U.S. 65, 71 (2014). "[T]he intent must go to the specific and entire crime charged—so here, to the full scope (predicate crime plus gun use) . . . ." *Id.* at 76. The intent requirement is satisfied, for example, when "[a]n active participant in a drug transaction . . . knows that one of his confederates will carry [and here, discharge] a gun." *Id.* at 77. Notably, the defendant's knowledge of the gun "must be advance knowledge" or, in other words, "knowledge that enables [the defendant] to make the relevant legal (and indeed, moral) choice," such as "opt[ing] to walk away." *Id.* at 78.

Curtis concedes that he took an affirmative act in furtherance of the § 924(c) offense by selling drugs as a member of the drug conspiracy charged in Count One, and that this admission satisfied the first requirement of *Rosemond*. But he claims that there is no basis for concluding that his intent extended to the discharge of a weapon, as required for a violation of § 924(c) that

8

carries a ten-year mandatory minimum penalty. Curtis relies entirely on an incident on May 28, 2017, which he described during his plea colloquy. As Curtis told the district court: "members of my group noticed a member of a rival neighborhood group that sold drugs and decided to get a gun and follow him. I was there. I knew that after they got the gun, that they would use that gun, and they did by firing it." App'x at 90. Curtis argues that although he admitted during his colloquy that he had foreknowledge that his co-conspirators had a firearm and were going to discharge it, he later stated (during his testimony in another case) that he walked in the opposite direction— away from the shooting. This, he claims, demonstrates that he lacked any intent to aid or abet the shooting.

Even assuming that we could consider facts outside the record presented to the district court at the time of the guilty plea, Curtis's argument fails on the merits. His plea allocution was based on far more than the single incident on May 28, 2017. During his plea hearing, Curtis admitted more broadly that he had participated in the underlying drug conspiracy from 2011 to 2018; that during that same period, his group of drug conspirators "used and carried guns to protect our drug territory and business"; that he "also knew that sometimes different members of the group brandished and discharged or fired these guns to protect our drug territory and business," and he "knew that happened on multiple occasions." App'x 90. He described the May 28, 2017, incident only as an "example" of those "multiple occasions." *Id.* Because Curtis admitted that he had knowledge of "multiple" shootings by his co-conspirators, yet continued to participate in the drug conspiracy over a period of years that extended from 2011 to 2018—that is, even after he became aware of the shootings, including the 2017 episode—there was an ample factual basis to conclude that he intended to facilitate a § 924(c) offense that involved discharge of a firearm.

\* \* \*

9

We have considered Sumpter's and Curtis's remaining arguments and find them unpersuasive. Accordingly, we **AFFIRM** the judgments of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk